----

(38 Misc. Rep. 399.)

### In re AMMARELL.

(Surrogate's Court, Kings County. July, 1902.)

1. SURROGATE'S COURT—JURISDICTION.
   The surrogate has no jurisdiction to determine the validity of an assignment to an executor of a mortgage formerly belonging to decedent when attacked for fraud.

2. SAME—ACCOUNTING BY EXECUTOR.
   Where on an accounting an executor was found to hold assignments of mortgages formerly belonging to his testatrix, and to claim them as his own, and a contestant of his account alleged that the assignments were delivered to him by the testatrix to assist him in distributing her estate on her death, and the evidence showed that she kept possession of the mortgages, and dealt with them as her own, and also that at one time the executor had regarded them as the property of the testatrix, the surrogate had jurisdiction to make the executor account for the mortgages as assets of the estate, though he had no control over the assignments.

In the matter of the account of Henry C. Ammarell, executor of Catherine Bringhlf, deceased. Decree for settlement rendered.

Israel Ludlow, for executor.
Kiendl Bros. and Kapp & Law, for contestant.

CHURCH, S. The contestant seeks to surcharge the executor with certain bonds and mortgages, which it is claimed were the property of the deceased. The executor attempts to claim, on the other hand, that these bonds and mortgages had been duly assigned to him, and that, therefore, this court has no power to set aside any such conveyance on the ground of fraud, or upon any of the principles under which a court of equity has jurisdiction. That a surrogate's court does not possess the general powers of a court of

equity cannot be questioned, and that it has not jurisdiction to try and determine the validity of an assignment where the same is attacked on the ground of fraud. Redf. Sur. (5th Ed.) 48; Woodruff v. Woodruff, 3 Dem. Sur. 505. And it has also been explicitly held that "a surrogate's court has no power, on the accounting of an executor, to decide that a transfer made during the lifetime of the deceased to the person who was afterwards appointed his executor, and valid as between the parties, was void as to creditors; and cannot thereupon require the executor to account for what he has thus received." In re Kellogg, 39 Hun, 275. These general powers of the surrogate have been discussed and amplified in Re Walker, 136 N. Y. 20, 32 N. E. 633, and in Re Randall, 152 N. Y. 508, 46 N. E. 945. The counsel for the contestant does not attempt to assail the correctness of this proposition, but contends that the surrogate's court in this case has jurisdiction for the following reasons, viz.: That the assignments of the bonds and mortgages in question, which were executed by the deceased to the executor, were not completed or perfected gifts or conveyances to the executor, but that, on the contrary, the assignments were simply delivered as a scheme or purpose to assist the executor in the distribution of the estate when the testatrix should die, and that the legal title to these bonds and mortgages remained in the deceased up to the time of her death, and that she exercised full and complete ownership of the same. Therefore this is not a proceeding to set them aside, but, as they are part of the deceased's estate, the executor should account for same. A consideration of the same satisfies me of the correctness of the views contended for by the contestant. The proof is positive and complete that the deceased remained in full possession of the bonds and mortgages, and exercising full ownership over same until the time of her death, and that the various mortgagors therein named never heard or knew of Mr. Ammarell (the executor herein) having any right to the moneys of such bonds and mortgages, and that the payments of interest accruing thereon during all the time up to the death of the testatrix were paid directly to her. There is also some evidence showing that the executor appreciated that these mortgages were given to him to distribute in accordance with the will of the deceased. The evidence is clear and positive, also, that at the time that one of these mortgages was collected each of the legatees received the proportionate share to which he was entitled. It is true that the executor tries to pretend that this money was sent by his wife, and also that it was sent to assist the relations on the other side of the water. This excuse is flimsy. The coincidence of the charity of this executor happening to extend to the various legatees in the exact proportion to which they were entitled if this mortgage was a part of the estate shows that it was meant as a payment of the legacy, and not as any charity. The mere fact that he should choose to try and excuse it makes his conduct on this matter more suspicious, and satisfies me that up to that time it was his belief that these bonds and mortgages were to be treated as a part of the estate of the deceased.

The questions thus presented for my consideration are unusual, and I can find no direct authority in support of the same, and, with some hesitation, because of my having some doubt as to my power, I will hold that these bonds and mortgages should be treated as part of the decedent's estate, and that the executor should be surcharged with the amount of the same. I have exercised jurisdiction in this matter because I am so completely satisfied from the facts that the deceased and this executor both intended that these bonds and mortgages were to be regarded as part of the decedent's estate, and that the executor has assumed, in the first instance, to treat them as such, and, thus believing, it did not seem proper to approve of the accounts of an executor who was now acting in defiance of his trust. The executor should therefore be surcharged with the bond and mortgage made by one Gertrude Schultz for $1,000, and interest collected from May, 1898; also a bond and mortgage made by Mr. Hyer, for $600, and interest thereon from May, 1898; also the interest on the bond and mortgage made by Klober, for $775; and also the money in the Williamsburg Savings Bank, amounting to $600, and interest from May, 1898.

Let a decree be presented for settlement hereunder. Decreed accordingly.