seq.; Young v. Conklin, 3 Misc. Rep. 122, 23 N. Y. Supp. 993; Jewell v. Heinzel, 6 Daly, 411; Mullane v. Roberge, 21 Misc. Rep. 342, 47 N. Y. Supp. 155.

The judgment of the justice's court is affirmed, with costs.

Judgment affirmed, with costs.

(58 Misc. Rep. 511)

## In re DITTRICH.

(Surrogate's Court, Kings County, March, 1907.)

1. COURTS—SURROGATE'S COURT—JURISDICTION.

On an accounting, it was claimed that the executrix should be surcharged with the value of certain bonds and mortgages, the assignment of which was alleged to have been procured by fraud. *Held*, that the Surrogate's Court had no jurisdiction to pass on the claim.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 472.]

2. GIFT—EVIDENCE.

Evidence *held* insufficient to establish a gift causa mortis of certain savings bank deposits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, § 154.]

3. EXECUTORS—ACCOUNTING—OBJECTIONS—BURDEN OF PROOF.

Where an executrix paid to an attorney a bill for services rendered deceased in her lifetime, the burden was on contestant to show its impropriety.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 2170, 2173.]

In the matter of the application of Andrew Dittrich, executor of Mary Dittrich, deceased, for the removal of Ellen C. Duffy, as executrix and testamentary trustee.

See 102 N. Y. Supp. 1124.

Phelps, Evins & East and Francis G. Caffey, for contestants.

C. P. & W. W. Buckley, for accountant, Ellen C. Duffy.

CHURCH, S. The claim of the contestants that the executrix should be surcharged with the value of certain bonds and mortgages involves the question of whether their assignment had been procured by fraud, and, under the circumstances, this court has no jurisdiction to try the question. The subject is carefully considered in Matter of Ammarell, 38 Misc. Rep. 399, 77 N. Y. Supp. 932, and it is unnecessary to add to what was there set forth.

The claim is made that the executrix should be surcharged with the amount in the Bushwick and German Savings Banks; but the executrix contends that this is her individual property. On the face of the accounts it appears that they are in the joint names. If nothing appeared but the form of the deposit, and this had been the form in which it had been originally opened, it might be assumed that each had an equal interest. Wetherow v. Lord, 41 App. Div. 413, 58 N. Y. Supp. 778. Where, however, a person opens an account in a savings bank, depositing his own money, and afterward makes the account a joint one, this might justify a holding that it was the intention to have the survivor take the whole fund. Farrelly v. Emigrant Savings Bank,

92 App. Div. 529, 87 N. Y. Supp. 54, affirmed in 179 N. Y. 594, 72 N. E. 1141. "There is some authority for holding that the change in the form of deposit, by which the son was enabled to draw equally with the mother, is evidence of an intent upon the part of the mother to constitute the son a joint owner with her in the fund." The opinion in that case was written by Judge Hatch, who also wrote the opinion in Wetherow v. Lord, and by nothing in the Farrelly Case is there indicated any intention of interfering with the doctrine announced in the earlier holding. In addition, the Farrelly decision held that the real question to be determined was the intent of the depositor in opening the account, which was to be discovered from all the facts.

The court also expressly said that it was in no way their intention to conflict with the decision in Matter of Bolin, 136 N. Y. 177, 32 N. E. 626, and the affirmance of the Court of Appeals may be taken as a reaffirmance of the doctrine in Matter of Bolin, supra. In that case, a woman having an account in her own name subsequently had it opened in the joint names of herself and her daughter. After the death of the mother, the daughter claimed the account. In commenting upon this, the court says:

"In the absence of other evidence, the transaction simply evidenced a purpose of the depositor of the moneys that they should be drawn out by either of the persons named."

In the case at bar the facts are very similar to those in the case quoted. The deceased was a widow, having considerable means; her children were grown up, and had families of their own; and she was afflicted with a cancer. The executrix, who was an unmarried sister of mature years, lived with her and cared for her and attended to the household matters. The opening of the account in this way is, therefore, as consistent with the motive of convenience as with any intention to make a gift of the deposit. It is claimed by the executrix, however, that, at the time the accounts were changed, the deceased made a gift of them to her. This transaction occurred in the presence of a certain bank officials, but they do not confirm the executrix, and her testimony as to the intention of the deceased is uncorroborated. The bank officials declare that they would open an account in this way where the parties said they desired to have it done for the sake of convenience. The inference of the executrix that the deceased was grateful to her, and that these accounts were presented as a recognition of her services or in the nature of payment is not sustained by the evidence, which, on the contrary, rather negatives such an assumption. The deceased had given the executrix all her jewelry and ornaments, and by her will she left her a dwelling having an equity of over $4,000. The executrix had also two assignments of mortgages worth over $9,500, and in addition she put in a claim to the estate of $6,500 for caring for the deceased. That claim has been withdrawn; the reason being, she says, that there has "been too much talk about it." It is apparent that this is a pretext, and not a reason, and that, when her official accounts came under judicial investigation, it became evident to her and to her counsel that it was extremely improbable that she could establish a just claim for this large

sum of money against the deceased, from whom she had received such substantial gifts as have been alluded to. If this is so, it follows that a person who would put in a fictitious claim against an estate for services rendered would be equally capable of putting in a fictitious claim against an estate as to gifts received from the deceased. As a gift is never presumed, and as the entire evidence in this case fails to establish any intent on the part of the deceased to make a gift of these accounts, the sums on deposit in these two banks should be regarded as the property of her estate. There is nothing in Matter of Barefield, 177 N. Y. 387, 69 N. E. 732, 101 Am. St. Rep. 814, conflicting with this decision. That case could not have been carefully examined by counsel for the executrix, as the quotation contained in his brief was from a part of the opinion in which the question here under consideration was not the subject of examination by the court. All that that case held, so far as it is applicable to the state of facts in hand, was that the decision of the Surrogate's Court had support in the finding, and was therefore justified. My decision in that case, as in this, announced that the controlling consideration was the question of intent, which I there determined from an examination of all the facts and circumstances.

With regard to the bill of $75 paid to counsel, it appears that this was for services rendered to the deceased in her lifetime. The burden was therefore upon the contestant to show its impropriety; and, as there is nothing upon the face of the bill which is improper, I shall overrule the objection thereto.

Let findings and decree be prepared in accordance with this opinion.

Decreed accordingly.