Matter of the Estate of NAT C. GOODWIN, Deceased.

(Surrogate's County, New York County, December, 1920.)

Gifts — causa mortis — accounting — executors and administrators — jurisdiction — Surrogate's Court — evidence — Code Civ. Pro. § 2679.

> Objection having been made to the accounts of an administrator for failure to account for the proceeds of a judgment assigned by the decedent and satisfied of record, a motion to dismiss the objection, on the ground that the Surrogate's Court has no jurisdiction to determine the issues involved, will be denied under section 2679 of the Code of Civil Procedure.
>
> Where, with the exception of delivery, all the other elements of a gift *causa mortis* of household furniture, of which decedent had no right of possession until the termination of the lease of an apartment which he had sublet, were amply proved and conceded, and it appears that he had given the donee the keys of the apartment before the gift was formally evidenced by a writing, it will be held that there was a valid gift *causa mortis*.

PROCEEDINGS upon the accounting of an administrator.

House, Grossman & Vorhaus, for administrator.

Rosenthal & Halperin (Max Halperin, of counsel), for Georgia Gardner.

Dittenhoefer & Fishel (I. M. Dittenhoefer, of counsel), for objectants Marc Klaw and Abraham L. Ehrlanger.

Hedges, Ely & Frankel, for creditor of decedent, John Wanamaker.

COHALAN, S.   Jurisdictional question:
Objection is made to the account upon the ground that the administrator has failed to account for the

proceeds of a judgment in the sum of $15,374.56, which was satisfied of record on August 5, 1919. Upon showing that the judgment was assigned by the decedent during his lifetime the administrator moves to dismiss this objection upon the ground that a determination of this issue involves the exercise of general equitable power which the surrogate does not possess. The administrator relies upon *Matter of Schnabel,* 202 N. Y. 134, and the objecting creditors upon *Matter of Watson,* 215 id. 209.

In *Matter of Schnabel, supra,* it appeared that the intestate had delivered to his wife, the administratrix, a bill of sale which transferred to her a saloon business. Upon her accounting objections were filed upon the ground that she had not accounted for the proceeds of the sale of the saloon business. The administratrix set up the bill of sale, which was found to be fraudulent and void. The Court of Appeals held that notwithstanding the provisions of section 2731 of the Code of Civil Procedure, the surrogate had no jurisdiction to set aside the bill of sale.

In *Matter of Watson, supra,* a similar situation arose. Objections were made to the executors' account upon the ground that they failed to account for a ruby ring and a pearl necklace which it was alleged belonged to the testatrix at the time of her death. One of the accountants claimed that the ring and necklace had been given to her by the decedent. Upon the authority of *Matter of Schnabel, supra,* the Appellate Division decided that the surrogate had no jurisdiction to determine the issue. The Court of Appeals, however, said (215 N. Y. 211) :

" The appellant in this case merely invoked the jurisdiction of the surrogate to compel an executor to account for the property of the testator, and the exercise of that jurisdiction depended solely on the

determination of the question of fact whether the property belonged to the testatrix at the time of her death. If the mere assertion of a claim of ownership by an executor ousts the surrogate of jurisdiction to compel an account of the property of the testator, it will be a simple matter to accomplish that result in every case in which an executor may prefer some other tribunal. Section 2731 of the Code of Civil Procedure, prior to the amendment of 1914, provided in part as follows: ' On the judicial settlement of the account of an executor or administrator, he may prove any debt owing to him by the decedent. Where a contest arises between the accounting party and any of the other parties respecting property alleged to belong to the estate, but to which the accounting party lays claim either individually or as the representative of the estate, or respecting a debt, alleged to be due by the accounting party to the decedent, or by the decedent to the accounting party, the contest must, except where the claim is made in a representative capacity, in which case it may, be tried and determined in the same manner as any other issue arising in the surrogate's court.' It would seem that the present case falls within both the letter and the spirit of the provision just quoted.''

Section 2731 of the Code of Civil Procedure as above quoted (now 2679) is substantially the same as now, so far as this question is concerned. To show '' That the Surrogate's Court has jurisdiction to try and determine the issues arising upon such a contest as was involved in this case '' (p. 213), the Court of Appeals in the *Watson* case (p. 213) cited several Surrogate's Court cases, among which are *Matter of Ammarell,* 38 Misc. Rep. 399, which involved an assignment, and *Matter of Munson,* 70 id. 461, which involved the validity of a mortgage and other instruments, and

*Matter of Archer,* 51 id. 260, which involved an assign-
ment of savings bank accounts.  In each of these cases
the same question of jurisdiction was raised that is
involved in this case.   After citing these cases the
Court of Appeals said (p. 213): "Plainly the Surro-
gate's Court has jurisdiction to try and determine
issues arising upon any contest respecting a debt
alleged to be due by the accounting party to the deced-
ent or by the decedent to the accounting party.  With
equal reason it should have jurisdiction to determine
conflicting claims of ownership to personal property
between an accounting party and his estate.  The trial
and determination of such issues falls far short of the
exercise of general equitable jurisdiction, and we think
that the statute was intended to confer jurisdiction in
both classes of cases."  By the above language and by
the citation of Surrogate's Court cases involving the
validity of assignments and mortgages it appears that
the *Watson* case practically overruled the earlier
*Schnabel* case.  Section 2731 of the Code of Civil Pro-
cedure (now 2679) is now held to mean just what it
says.

   If the question of jurisdiction were in any
doubt after the Watson decision the subsequent revi-
sion of chapter 18 of the Code of Civil Procedure, in
1914, including the enactment of section 2510 of the
Code of Civil Procedure, as it now reads, seems to give
to the Surrogate's Court an ample grant of jurisdic-
tion.  Even under the narrowing constructions of sec-
tion 2510 of the Code of Civil Procedure, that have
been adopted by the Appellate Division beginning
with the *Holdworth* case (166 App. Div. 150), sub-
divisions 3 and 4 of section 2510 of the Code of
Civil Procedure, read in connection with the general
grant of jurisdiction contained in the first paragraph
of the section, are certainly sufficient.  *Matter of*

*Brady,* 111 Misc. Rep. 492. The motion to dismiss this objection is denied.

Question of gift:

Miss Georgia L. Gardner claims title to the furniture referred to in Schedule G of the account through a gift *causa mortis.* It appears to be practically conceded that Mr. Goodwin died of the ailment from which he was suffering when he made the gift. All of the other elements of a gift *causa mortis,* except delivery, were amply proved and in effect conceded at the hearing. This is the only question discussed in the briefs submitted. The gift is alleged to have been made December 26, 1918. It was evidenced by a writing which among other things stated, "To you Georgia L. Gardner, in the event of my death, I give you the entire contents of my apartment at No. 601 West One Hundred and Fifteenth street to do with as you see fit." It appears that when the alleged gift was made the apartment was sublet and Mr. Goodwin was receiving the rent. One of the witnesses testified that the intestate asked Miss Gardner "if she had a list of the inventory of the apartment which he had sent her to get on the sublet and asked her if she had the keys to the apartment, with the list, and she answered, 'Yes,' and from that the conversation led into the drawing of this paper at his dictation." Mr. Goodwin spoke of how much Miss Gardner had done for him and stated that the furniture was all he had; that he did not expect to live very long, and expressed anxiety to do as much as he could for her; that he wanted her to have the apartment and that she should have it in writing. Later, on December 31, 1918, in the presence of another witness, the intestate again stated that he wanted Miss Gardner to have the title to the apartment. Miss Gardner was present and the paper was produced and Mr. Goodwin read it aloud. Miss Gardner produced a copy

Surrogate's Court, New York County, December, 1920. [Vol. 114.

of this paper at the hearing and it was stipulated that it be used in place of the original, which had been submitted to this court upon a prior application and has not yet been found.

It thus appears that the donor had already given the keys of the apartment to Miss Gardner before the gift was formally made. It was not necessary for him to ask her for the keys and again formally present them with the paper that he executed. It seems to be sufficient if he referred to the fact that she had the keys and therefore possessed the means to reduce the furniture to possession. She was not bound to do so at once. In fact, Goodwin's gift was subject to the lease of the apartment with the furniture included. He had no right to the possession of the furniture until the termination of the lease. The fact of the existing lease and the collection of rent by him does not prove there was no delivery. It may also be pointed out that the testimony of the maid as to the keys is merely negative. She knew of two sets of keys only and said that her employer, Mr. Goodwin, did not have possession of either of them during the period when the gift was made. Unknown to her, however, he doubtless had a set of keys, which must have been the ones referred to by the witness, who testified to his statement that Miss Gardner already had the keys.

A symbolical delivery is sufficient. But even in gifts *inter vivos*, where the rule as to delivery is more strict, there is authority for the proposition that where the gift is evidenced by a writing, as in this case, the ordinary rules as to delivery are somewhat relaxed. See *Matter of Cohn*, 187 App. Div. 392; *Hawkins* v. *Union Trust Co.*, Id. 472.

I will hold that the intestate made a valid gift *causa mortis* to Miss Gardner.

Decreed accordingly.