JESSIE WALLACE et al., Appellants, *v.* HOWARD G. WAL-
LACE, Individually and as Surviving Executor under
the Will of JULIET WALLACE, Deceased, et al.,
Respondents.

Will — evidence — when attorney may testify as to communi-
cations from client — indisputable evidence required to attribute
irrevocability to will — evidence required to show contract by one
since deceased to dispose of his property in a certain manner —
insufficiency of evidence to · show agreement to make mutual
irrevocable wills.

1. A husband and wife consulted an attorney with reference
to the drafting of mutual wills, which contained reciprocal con-
ditions. *Held,* that the provisions of section 835 of the Code of Civil
Procedure preventing an attorney from divulging communications
from a client do not apply in a controversy arising between bene-
ficiaries under such wills. The disability exists only when the com-
munications are intended to be confidential. (*Matter of Cunnion,*
135 App. Div. 864; 201 N. Y. 123, distinguished.)

2. The evidence required to show a contract by one since deceased
to dispose of his property in a certain manner after his death, must
be clear and convincing, or it will not be regarded as sufficient.

3. To attribute to a will the quality of irrevocability demands the
most indisputable evidence of the agreement which is relied upon
to change its ambulatory nature, and presumptions will not take
the place of proof.

4. Evidence examined, and *held,* that testimony of witnesses to
statements and declarations by decedents tending to show that
they contracted to make mutual irrevocable wills, together with
such evidence as the wills themselves present, is not sufficient to
establish that fact. (*Rastetter* v. *Hoenninger,* 214 N. Y. 66,
distinguished.)

*Wallace* v. *Wallace,* 158 App. Div. 273, affirmed.

(Argued June 17, 1915; decided September 28, 1915.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the second judicial department,
entered July 31, 1913, affirming a judgment in favor of

defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John H. Jackson, Ambrose F. McCabe, Emma Asby* and *Louis Bevier, Jr.,* for appellants. The court at Special Term erred in striking out the testimony of the witnesses Flynn, Devlin and Leddy. The testimony should not have been stricken out as privileged, because the evidence did not warrant the conclusion that the communications of Mrs. Wallace to the attorney acting for both herself and her husband were intended to be confidential as to her husband. (*McCulloch* v. *Hoffman,* 73 N. Y. 616; *Kent* v. *Harcourt,* 33 Barb. 491; *Jackson* v. *Woolsey,* 11 Johns. 445; *Mowell* v. *Van Buren,* 77 Hun, 569.) If two persons are cognizant of a communication to an attorney of a matter involving a matter of common interest, the communication is not privileged in a litigation between those two persons involving that matter. (*Hurlburt* v. *Hurlburt,* 128 N. Y. 420; *Sherman* v. *Scott,* 27 Hun, 331; *Britton* v. *Lorenz,* 45 N. Y. 51; *Sandiford* v. *Frost,* 9 App. Div. 44; *Mertens* v. *Wakefield,* 35 Misc. Rep. 508; *Doheny* v. *Lacy,* 168 N. Y. 213; *Rosenberg* v. *Rosenberg,* 40 Hun, 91; *Smith* v. *Crego,* 54 Hun, 22; *Green* v. *Green,* 58 Hun, 251.) If two persons are, at the time of its making, cognizant of a communication by one of them to his attorney, which does not involve a matter of common interest, the communication is not privileged in any litigation. (*Baumann* v. *Steingester,* 213 N. Y. 328; *Matter of McCarthy,* 55 Hun, 7; *Matter of Simmons,* 48 Misc. Rep. 484; *Lecour* v. *Importers & Traders Bank,* 61 App. Div. 163; *People* v. *Buchanan,* 145 N. Y. 1.) The error in striking out this evidence was highly prejudical. (*Edson* v. *Parsons,* 155 N. Y. 555; *Rastetter* v. *Hoenninger,* 214 N. Y. 66; *Orford* v. *Walpole,* 3 Ves. 402.)

*Clifford Couch* and *Franklin Couch* for respondents. The court did not err in striking out the testimony of witnesses, clerks employed by the attorney who drew the will of May 18, 1894. (Code Civ. Pro. § 835; *Matter of Cunnion*, 135 App. Div. 864; *Loder* v. *Whelpley*, 111 N. Y. 239; *Matter of Coleman*, 111 N. Y. 220; *B. M. E. Church* v. *Brooks*, 143 App. Div. 685; *Matter of Young*, 14 A. & E. Ann. Cas. 596; *Rintelen* v. *Schaefer*, 152 App. Div. 727.) A judgment cannot be reversed for error in rejecting admissible evidence where the evidence if received would not have changed the result; such an error being harmless. (*Matter of Rice*, 81 App. Div. 223; 176 N. Y. 223; *Prime* v. *City of Yonkers*, 131 App. Div. 110; *De St. Laurent* v. *Slater*, 23 App. Div. 70; *McSorley* v. *Hughes*, 58 Hun, 360; *Matter of Turner*, 208 N. Y. 261; *Horn* v. *Pullman*, 72 N. Y. 269; *Post* v. *B. H. R. R. Co.*, 195 N. Y. 62.) Appellants would not be entitled to judgment without reference to extrinsic proof of the contract alleged in the complaint, even if the contents of the will of Juliet Wallace of May 18, 1894, had been proved. (*Rastetter* v. *Hoenninger*, 151 App. Div. 853; *Edson* v. *Parsons*, 155 N. Y. 555; *Driscler* v. *Van Den Hinden*, 17 J. & S. 508; *Miller* v. *Hill*, 64 Misc. Rep. 199; 137 App. Div. 378; 203 N. Y. 654; *Everdell* v. *Hill*, 27 Misc. Rep. 285; *Walpole* v. *Orford*, 3 Ves. 402; *Mahany* v. *Carr*, 175 N. Y. 454; *Rankin* v. *Simpson*, 19 Penn. St. 471.) The Appellate Division having unanimously sustained the findings of fact of the Special Term, that the plaintiffs had failed to prove the contract alleged in the complaint, the error, if any, of the Special Term in striking out admissible testimony is not reversible error. (*Matter of Cameron*, 47 App. Div. 120; 166 N. Y. 120; *Kearney Co.* v. *Irvine*, 126 Fed. Rep. 689; *Kimbo* v. *Cont. Ins. Co.*, 101 Tenn. 245.) In an action in equity for the specific performance of a contract, the plaintiff must prove by full, clear, definite, satisfactory and indubitable evidence, first, the

making of the contract; second, all the terms and conditions of the contract, specifically and distinctly, leaving none of them incomplete or in doubt or uncertain. The court cannot act on conjecture or compel the performance of a contract vague in its terms. (*Winne* v. *Winne*, 166 N. Y. 263; *Tousey* v. *Hastings*, 127 App. Div. 94; *Holt* v. *Tuite*, 188 N. Y. 17; *Everdell* v. *Hill*, 58 App. Div. 151; *Pattat* v. *Pattat*, 93 App. Div. 104; *Rosseau* v. *Rosseau*, 180 N. Y. 166; *Crouse* v. *Frothingham*, 97 N. Y. 105; *Sarasohn* v. *Kamasky*, 120 App. Div. 110; *Gouge* v. *Gouge*, 26 App. Div. 154; *Dunckel* v. *Dunckel*, 141 N. Y. 427.) In an action in equity for the specific performance of an oral contract alleged to have been made by a deceased person that his will shall not be changed or revoked, such contract must be clearly, definitely and fully established by the clearest, most convincing, most indisputable evidence. (*Edson* v. *Parsons*, 155 N. Y. 555; *Wilson* v. *Heath*, 23 Misc. Rep. 714, 718; *Cross* v. *Cleary*, 20 Ont. 542; *Russell* v. *Sharp*, 192 Mo. 270; *Wilson* v. *Toothaker*, 18 A. & E. Ann. Cas. 1190; *Shaw* v. *Schoover*, 130 Ill. 449; *Kirk* v. *Middlebrook*, 201 Mo. 245; *Wood* v. *Chapin*, 13 N. Y. 509; *Josslyn* v. *Rockwell*, 59 Hun, 129; *People* v. *Stephenson*, 11 Misc. Rep. 141; *Hast* v. *Carroll*, 85 Penn. St. 508; *Allison* v. *Burns*, 107 Penn. St. 50; *Highlands* v. *P. & P. R. Co.*, 209 Penn. St. 286.) Alleged declarations of Juliet Wallace made May 14, 1894, to James P. Hoyt, and before the execution of wills of May 18, 1894, are not admissible in evidence to contradict the terms of the will of James P. Wallace or to show that the absolute gift to Mrs. Wallace and to her heirs forever was conditional or in trust. (*Throckmorton* v. *Holt*, 180 U. S. 552; *Stevens* v. *Van Cleve*, 5 Wash. 569; *Williams* v. *Freeman*, 83 N. Y. 561; *Dau* v. *Brown*, 4 Cow. 453; *Sugden* v. *St. Leonards*, L. R. [1 P. D.] 154; *Hammersley* v. *Lockman*, 2 Dem. 524; *Marx* v. *McGlynn*, 88 N. Y. 357; *Matter of Burbank*, 104 App. Div. 312; *Rothschild* v. *Goldenberg*,

103 App. Div. 235; Underhill on Wills, § 220; *White* v. *Hicks*, 33 N. Y. 383; *Jackson* v. *Kniffin*, 2 Johns. 31; *Matter of Kennedy*, 167 N. Y. 163.) Declarations of James P. Wallace alleged to have been made to Miss Whitcomb after the date of his will are not admissible in evidence. (*Throckmorton* v. *Holt*, 180 U. S. 552; *Matter of Burbank*, 104 App. Div. 312; *Cromer* v. *Pinckney*, 3 Barb. Ch. 466; *Johnson* v. *Cole*, 178 N. Y. 364; *Kelly* v. *Home Sav. Bank*, 103 App. Div. 141; *Schelps* v. *Bowery Sav. Bank*, 97 App. Div. 434; *Augermiller* v. *Ewald*, 135 App. Div. 691; *Eighmey* v. *People*, 79 N. Y. 546; Jones on Ev. § 345; *Sanford* v. *Ellithorp*, 95 N. Y. 53; *Tierney* v. *Fitzpatrick*, 195 N. Y. 433.) Declarations of Mrs. Wallace made after the death of James P. Wallace are not admissible to affect the title of Mrs. Wallace to the property given to her absolutely by the will of her husband. (*Gibney* v. *Marchay*, 34 N. Y. 301; *Jackson* v. *Shearman*, 6 Johns. 19; *Jackson* v. *Vosburgh*, 7 Johns. 186; *Baird* v. *Slaught*, 28 N. Y. S. R. 667; *McDuffie* v. *Clark*, 39 Hun, 166; *Dodge* v. *Freedman S. & T. Co.*, 93 U. S. 379; *People* v. *Holms*, 166 N. Y. 540; *Sanford* v. *Sanford*, 61 Barb. 293; *Barnes* v. *Taylor*, 27 N. J. Eq. 259.)

CUDDEBACK, J. This action was brought to compel specific performance by the defendant Howard Gurdon Wallace, individually and as executor, of a contract made between James P. Wallace and his wife, Juliet Wallace, to execute mutual irrevocable wills.

The complaint alleges that shortly prior to the 18th day of May, 1894, James P. Wallace and his wife, Juliet Wallace, entered into a contract whereby it was agreed that the husband should make his will devising and bequeathing to his wife all his property, real and personal, provided she should be living at the time of his death, and if she was not living, to direct that his estate should be divided into two equal parts, one part going to

certain of his relatives, and the other part to certain of his wife's relatives. The contract also provided that the wife should make her last will and testament, devising and bequeathing all her property and estate to her husband, provided he should be living at the time of her death, and if not living, to direct that her property be divided into two equal parts, and disposed of in the same manner and to the same persons mentioned in the will of the husband.

The contract also was that the wills so made should be irrevocable and forever binding upon the parties. The complaint further alleges that the contract was duly executed and mutual and reciprocal wills were made as provided for on May 18, 1894.

On January 18, 1897, the husband, James P. Wallace, died and his last will and testament made according to the provisions of the contract was duly proved and his estate was disposed of as provided by the will. Subsequently and on May 2, 1902, the widow, Juliet Wallace, made another last will and testament contrary to the provisions of the contract, and to the will of May 18, 1894. She died on November 29, 1909, and her will made in 1902 was proved and admitted to probate, and the defendant Howard Gurdon Wallace, the executor therein named, was proceeding to dispose of and distribute the estate of the decedent in compliance with such will when this action was brought.

The plaintiffs were beneficiaries under both wills of Juliet Wallace, but the shares that they would have received under the will of 1894 were considerably larger than those which they received under the will of 1902. The defendant Howard Gurdon Wallace was also a legatee under both wills of Juliet Wallace, but he received a very much larger portion of her estate as residuary legatee under the second and last will than under the first.

The will executed by Juliet Wallace on May 18, 1894,

3

could not be produced on the trial of the action and secondary evidence was offered to show its contents. The lawyer who drew the will of the husband, James P. Wallace, in 1894, and who, it was alleged, had also drawn the will of Juliet Wallace in that year, was dead at the time of the trial. Three witnesses who had all been employed by the lawyer were called upon to show the execution and contents of the missing will.

The first witness, John F. Devlin, testified that he had made an examination in the office of the deceased lawyer of the papers connected with the estates of James P. and Juliet Wallace, and had found what purported to be a typewritten copy of the will of Juliet Wallace, executed May 18, 1894. The next witness, Charles Flynn, was a clerk in the office of the same lawyer, and he testified that he had made the engrossed copy of the will of Juliet Wallace which was executed, and that he was a witness to the will and had also witnessed the will of James P. Wallace. He further testified to the due publication and execution of the will of Juliet Wallace, and that the other subscribing witnesses thereto were dead. The third witness, James H. Leddy, was a stenographer in the same law office. He testified that he had made the typewritten copy produced by the witness Devlin from the engrossed copy of the will made by Flynn, and that after making the copy he compared it with Flynn.

The typewritten copy was thereupon offered and received in evidence. The testimony of the three witnesses, Devlin, Flynn and Leddy, was first received by the trial court, but was afterwards stricken out on motion, and an exception taken to this last ruling of the court presents the main question argued on this appeal. The evidence was struck out as improper under section 835 of the Code of Civil Procedure because it revealed a confidential communication between attorney and client. With this ruling fell also the typewritten copy of the will, based on the evidence excluded.

The court excluded the testimony upon the authority of *Matter of Cunnion* (135 App. Div. 864; 201 N. Y. 123). In that case what purported to be the last will of the testator was offered for probate, and it was sought to show that he had made a subsequent will substantially revoking the one offered. The second will could not be found, and to prove its contents the attorney who drew the will and his stenographer were called as witnesses. The attorney produced a paper which was marked for identification, and the stenographer testified that she had made a copy of this paper and returned it with the copy to the attorney. The attorney then testified that the copy was the second will. It was held that the evidence of the attorney and his stenographer and the paper offered were properly excluded.

I think that decision is inapplicable and that the case under consideration rather falls within the principle of *Hurlburt* v. *Hurlburt* (128 N. Y. 420); *Doheny* v. *Lacy* (168 N. Y. 213) and *Britton* v. *Lorenz* (45 N. Y. 51). In *Hurlburt* v. *Hurlburt* a father and son went together to an attorney for advice on a matter in which they were both interested. The father and son were both dead and in a contest between their representatives the court held that the attorney was a competent witness to prove the statements of the deceased clients. The court said: "It has frequently been held that the privilege secured by this rule of law (§ 835 of the Code) does not apply to a case where two or more persons consult an attorney for their mutual benefit, that it cannot be invoked in any litigation which may thereafter arise between such persons, but can be in a litigation between them and strangers."

The only material difference between the facts in the case at bar and *Hurlburt* v. *Hurlburt* is that it does not here appear that both James P. Wallace and Juliet Wallace were present when the instructions to the attorney regarding the wills were given. But it does appear that at the same time and place and before the same witnesses

they executed their mutual wills which were prepared by the same attorney and that such wills contained reciprocal and identical provisions.

It was not essential that the statements of Mr. and Mrs. Wallace to the attorney should have been actually made in the presence of each other to bring the case within the rule laid down in *Hurlburt* v. *Hurlburt.* If both were not present when the communications to the attorney were made, it is certain that such communications were intended for the information of both of them. Neither intended what was said to the attorney with regard to the wills was to be kept a secret from the other. The business could not have been done in that way. The disability of an attorney to act as a witness applies only when the communications are intended to be confidential.

In Wigmore on Evidence (§ 2312) it is said: "There may be a relative, not an absolute, confidence. The chief instance occurs when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other."

It was error for the court to strike out the testimony of the three witnesses, Devlin, Flynn and Leddy, but the question remains whether the error was so prejudicial as to require a reversal of the judgment.

The plaintiffs rely very largely upon the contents of the wills themselves to establish the fact that there was a contract to make them irrevocable, and cite the case of *Rastetter* v. *Hoenninger* (214 N. Y. 66) to sustain this proposition. In that case there was a joint will, one instrument, executed by husband and wife, giving to the survivor of them the income of their property for life,

1915.]          Opinion, per Cuddeback, J.          [216 N. Y.]

with the remainder to their children. The court found, from the language used and the attending circumstances, that the will showed an agreement by the parties thereto not to revoke it. The mutual wills in the present case show no such agreement, but, to my mind, rather the contrary.

James P. Wallace and his wife were a childless couple. They had lived together, contented and happy, for many years. It was no doubt their intention that their joint property should go absolutely to the survivor. That purpose their reciprocal wills clearly and surely accomplished. Each gave to the survivor all his or her property absolutely. That absolute gift is strong evidence that the subsequent provision of the wills in favor of collateral relatives remained altogether subject to the control of the survivor.

The case of *Edson* v. *Parsons* (155 N. Y. 555, 568, 570) was in many respects very much like the case here. In *Edson* v. *Parsons* two sisters, who were maiden ladies, upwards of the age of sixty years, living together, made their mutual wills, drawn by the same attorney and executed at the same time, before the same witnesses. The scheme of the wills was alike. Each testatrix gave to the other a large part of her estate and made provision for a brother. One of the sisters died and the survivor thereafter executed another will making a different provision for the brother. This court, in sustaining the finding of the trial court, held that the mutual wills showed no contract that they were not to be revoked by the survivor. The court said: "The wills were similarly made and, hence, showed concert of action and similarity of purpose; but not necessarily a binding agreement of such solemnity and far-reaching consequences, as the appellant claims." The court also said: "I think it needs no further argument to show that to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change

its ambulatory nature, and that presumptions will not, and should not, take the place of proof."

The plaintiffs produce certain extrinsic evidence, which, it is argued, taken with the wills, furnishes proof of an express agreement between James P. Wallace and his wife to make their mutual wills irrevocable.

The plaintiffs called one James P. Hoyt, a cousin of James P. Wallace, who testified that four days before the making of the wills in May, 1894, Mrs. Wallace, in the presence of her husband, said to him, the witness: "James, do you expect anything from your cousin's estate when he dies?" The witness made no reply, and Mrs. Wallace continued: "Well, James, my husband, and I have agreed now to make a final disposition of our property and we are making our mutual wills in accordance with that agreement, and I have to say to you, James, that we have agreed not to include you in our wills and that we have decided to divide our property among our relatives nearer than you, equally dividing the property between the two families, but, James, we shall not forget you. We shall remember you as we have done in the past as long as we live."

The plaintiffs also called Ida T. Whitcomb, a friend of the Wallace family, who testified that James P. Wallace said to her in the presence of his wife that "they had agreed and had made their wills; that the terms of each were identical and that the survivor was to carry out the terms of both wills, and that these wills were final, and that in order to have all definitely arranged they had had a meeting of their family, and the family had been made to understand that they were final." The witness also testified that shortly after the death of James P. Wallace she had a conversation with Mrs. Wallace in which the latter spoke of having much on her mind and to think of, but that one thing was settled for all time and that was the wills that they had made, and that it would never be changed.

A further piece of testimony relied on by the plaintiffs is a letter written by Mrs. Wallace after her husband's death to one of the firm of attorneys to which the lawyer who had drawn the mutual wills in May, 1894, belonged, regarding a codicil which she executed. In the letter she said: "My husband gave me advice before his death to send at once for you for instructions to probate his will; that I might add a codicil to mine which we both wished for our faithful servants, which he did not think best to add to both of our wills. * * * "

The witnesses James P. Hoyt and Ida T. Whitcomb were not disinterested. The former expected that some provision for his benefit would be made from the estate of James P. Wallace, and the statement to which he testifies was simply notice to him that he would get nothing. I think the same may be said of the latter witness, and she was told by both Mr. and Mrs. Wallace that they had made their wills, and that the wills were final. The letter of Juliet Wallace to the attorneys relating to a codicil to her will is without significance so far as concerns the issues in this action.

The rule of law is that the evidence required to show a contract by one deceased, to dispose of his property in a certain manner after his death, must be clear and convincing, or it will not be regarded as sufficient. (*Edson* v. *Parsons, supra; Taylor* v. *Higgs,* 202 N. Y. 65; *Rosseau* v. *Rouss,* 180 N. Y. 116; *Tousey* v. *Hastings,* 127 App. Div. 94; 194 N. Y. 79.)

The testimony of the witnesses James P. Hoyt and Ida T. Whitcomb fell far short of satisfying this rule, and it was not sufficient, as the trial court held, to show a contract between James P. Wallace and his wife, Juliet, to make mutual irrevocable wills. If to their testimony is now added such evidence as the mutual wills themselves furnish the proof is still insufficient.

The error made in striking out the testimony of the witnesses Devlin, Flynn and Leddy was not, therefore, so

prejudicial as to lead to a reversal of the judgment appealed from. (*Post* v. *Brooklyn Heights R. R. Co.*, 195 N. Y. 62.) There are other questions raised by the respondents which in view of the conclusion reached it is not necessary to consider.

I recommend that the judgment be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, COLLIN, CARDOZO and SEABURY, JJ., concur.

Judgment affirmed.