## THIRD DEPARTMENT, NOVEMBER, 1918.

JOSEPH A. KELLOGG and Others, as Executors and Trustees, etc., Appellants, Respondents, v. SUSAN WHITE, Individually and as Executrix and Trustee, etc., Respondent, Appellant, Impleaded with ANNA WHITE and Others.

*Will — agreement for mutual wills — husband and wife — evidence.*

Appeals from a judgment of the Supreme Court, entered in the office of the clerk of Warren county April 26, 1918, as amended by an order entered May 3, 1918.

Judgment modified by striking therefrom the costs to the plaintiffs, and as so modified affirmed, with costs to the defendant Susan White. All concurred, except John M. Kellogg, P. J., who read a memorandum for reversal.

JOHN M. KELLOGG, P. J. (dissenting): I think the preponderating evidence shows that Mr. and Mrs. White agreed to execute, and did execute, mutual reciprocal wills. The trial judge, however, did not feel that this case was to be decided by a preponderance of evidence, but concluded that the contract must be certain and definite and established by the plainest,

most convincing and undisputed evidence, citing *Wallace* v. *Wallace* (216 N. Y. 28) and other cases.   (103 Misc. Rep. 167.)   That rule applies to establishing a claim against a decedent's estate, but has no application where a defendant sought to be charged with a contract is present in court and able to defend himself.   Mrs. White, against whom the contract is sought to be established, was sworn as a witness and gave her version of the transaction.   She can, therefore, only insist that the plaintiffs shall make out their case by a fair preponderance of evidence.   It seems clear that the judgment results in great part from this error as to the quality and quantity of the proof required.   The facts are plain, and indicate that the wills were intended to be mutual and reciprocal.   In fact the widow swears, in her deposition, and it seemed to be thoroughly her understanding, that but one will was executed and that both she and her husband executed the same will.   She denied, however, that there was any agreement about its being irrevocable. J. Huyler White, at the time of the making of the wills, February 26, 1915, resided with his wife, Susan White.   He was a man of dominating personality, and was in every sense the master of the house.   He was about seventy-nine years of age and she about seventy-three.   They had had two children, a son, J. Beecher White, who died in 1911 leaving his widow, Anna White, and four infant children who were entirely supported by their grandfatherg who was greatly attached to them.   The daughter Charlotte died, leaviny two children, the infant defendants Higley.   The testator had propert. of the value of about $70,000; the wife's property was worth about $2,000, The circumstances under which the wills were drawn; the fact that before the making of the last wills previous wills had been drawn of substantially the same tenor and at the same time; the terms of the wills, which treat the property of both as belonging to each; the codicils; the evidence of the attorney who drew the wills; the evidence of Mr. Lansing, a business associate of Mr. White and vice-president of the trust company in which he was interested, and the circumstances sworn to by each of these witnesses, make it clear that, as Mrs. White said, they were making one will, which will, as matter of fact, consisted of mutual reciprocal wills.   The fact that both were near the end of life and principally interested in the grandchildren would have made the disposition of the property of either without certain and ample provision for them unnatural.   There may be some question as to the rights of the plaintiffs to maintain this action.   But if the judgment were to be affirmed, in my judgment it is important, for the welfare of the family and all concerned, that the findings should be reversed and that it should be established thereby that the wills were mutual and reciprocal.   If it should be concluded that the plaintiffs cannot claim relief, the reversal of the findings upon the facts will to quite an extent accomplish the desired result of saving the property from the improvidences and want of business capacity of the widow.   The executors in the wills are the same. It is not established by the authorities what rights and duties executors of such wills have where one of the parties is deceased and the other party is using the property of the deceased in direct violation of the terms of the

wills. In a sense it may be said that Mrs. White has no will until her death. The fact, however, remains that she must at sometime die; that she cannot change this will and that the making of the two wills under the circumstances impose a trust upon the executors of the mutual wills to see that the property takes the course intended. We may treat the matter as Mrs. White did, that there was but one will. We find two papers executed at the same time, intended to operate together and both of which are necessary to show the intention of the parties, and they should be read together and treated as one. The executors bring the action in their capacity as executors of both wills. Clearly it was their duty to manage the property of the testator according to his will, and in order to manage it according to his will they must take into consideration that the will is but part of the mutual wills and that a consideration of both wills is necessary in order to determine their duties. They must observe the mandates of both wills in order to execute faithfully either of them. I think, therefore, that the action may be maintained, and it is unnecessary to discuss whether the actions should be brought by the executors of his will, or of her will, or of both wills. All the facts appear in the complaint, and if they in either capacity could maintain the action, it may be treated as properly brought. It is suggested that the executors are interested in the result of this controversy to such an extent as to impair their credibility. Their interest is merely incidental as to fees, and evidently the services to be rendered are worth the amount which they will receive. Their interest, therefore, has but little weight in considering their testimony. They are men of high character, having the confidence of the testator and his wife, and I feel that not only their evidence but the circumstances of the entire case make plain the correctness of the position they have taken here. He was a level-headed, successful business man; she was an old woman, unfamiliar with business affairs, and the property in her hands would be dependent, more or less, upon her whims and fancies and upon those with whom she might advise with from time to time. It is not probable that he would have left the future of his grandchildren in so uncertain a condition. He knew her better than any one else, and he felt that by placing the management of her property in Joseph A. Kellogg, Robert B. Lansing and Edward M. Angell it was safe, and that then her temper, whims or mistakes could not prejudice the grandchildren. We find her excitable and unreasonable upon the trial because the complaint overstates her age. Her evidence indicates his wisdom in causing to be made reciprocal wills. Her property was of but little value; his of great value. A natural disposition perhaps would have been to have given her the use of the property with the remainder to the grandchildren. But if it had been shown by the wills themselves that they were mutual and reciprocal, that would have been equally effective and perhaps better, as including her property as well as his. It is improbable that an attorney of the court, of high standing, would falsely admit that he made a mistake in not making the exact nature of the transaction appear from the wills themselves. The easier way would have been to have not

raised the question. But a sense of duty evidently compelled him to make good the mistake which he had made, and we find him admitting his mistake but urging that the mistake should now be made good. His position is not that of a weak man or an insincere man, but of a sincere and strong-minded man who is willing to admit his mistake and anxious to correct it. I favor a reversal.