In the Matter of the Judicial Settlement of the Account of George F. Wiemann and Another, as Executors of the Last Will and Testament of Frederick Wiemann, Deceased, Respondents, Appellants.

Amalia Henke and Others, Appellants, Respondents.

First Department, April 22, 1927.

Gifts — gift inter vivos — evidence shows gift of mortgages by assignment to business associates who were relatives of testator — gift of Liberty bonds to landlady of boarding house where testator lived is established — evidence — admissions of testator, tending to diminish estate, are admissible in favor of donee.

In accounting proceedings by the executors it was contended by the objectants that the executors should be surcharged with the value of certain mortgages and the value of certain Liberty bonds which the executors claimed were given them by the testator prior to his death.   The evidence establishes a gift of the mortgages to certain business associates and relatives of the testator by assignments which were executed about the same time that his will was executed. It appears that the mortgages were assigned and that they were actually delivered and remained in the possession of those to whom they were assigned, and the mere fact that there was a recital in the assignments of a consideration equal to the face of each mortgage does not overcome the other evidence to the effect that the testator intended an absolute gift.

There was also a gift of certain Liberty bonds to the landlady of the boarding house in which the testator had lived for about fourteen years, since it appears that the bonds in question were in the possession of one of the legatees and while so in the possession of said legatee, the testator stated in the presence of the donee of the bonds and others, that said legatee held them for the donee, and at other times made similar statements in the presence of witnesses to the effect that the bonds had been given to the donee and were left in the possession of the legatee in question for safekeeping.   The evidence also shows that said legatee acknowledged by a letter the receipt of the bonds for the benefit of the donee.

Under all the proof, including the admissions of the testator, which were admissible against his estate, since they tended to diminish his property, a gift of the bonds *inter vivos* was established.

APPEAL by Amalia Henke and others from certain parts of a decree of the Surrogate' Court of the county of New York, entered in the office of said Surrogate's Court on the 19th day of August, 1922.

Appeal by George F. Wiemann and another, as executors, from that part of said decree surcharging the executors with various sums.

*Irving J. Joseph* of counsel [*Louis Joseph* with him on the brief; *L. & I. J. Joseph,* attorneys], for the contestants, appellants, respondents.

• *Harold Harper* of counsel [*Rothwell, Harper & Matthews,* attorneys], for the executors, respondents, appellants.

MARTIN, J.   The will of Frederick Wiemann, who died on January 19, 1919, was duly admitted to probate without contest on February 21, 1919.   By it the residuary estate was divided equally among the nine children of his deceased sister, Amelia Bender, and the four children of his deceased brother George F. Wiemann, each receiving one-thirteenth.   George F. Wiemann, a nephew, and the son of the decedent's brother of the same name, was made one of the executors.   He was the head of the George F. Wiemann Company, engaged in the wholesale coffee business at No. 406 Greenwich street, New York city.

George F. Wiemann had been in close and daily association with the decedent for upwards of twenty-five years.   The other executor, George Eilers, was associated with George F. Wiemann in the business mentioned as were Albert B. Wiemann and Frederick Wiemann, nephews and legatees.   The will specifically bequeathed two mortgages to George Eilers.

The objectants to the account as filed were five of the children of Amelia Bender, deceased.   Three of her children, one an incompetent, and two of the children of George Wiemann, deceased, have not joined in the contest, although their rights are the same as those of the objectants.

The objections relate chiefly to four gifts, two to George F. Wiemann, one of the executors, a third to his brother, Albert B. Wiemann, and a fourth to one Clara Pallehner from whom decedent rented rooms and with whom he boarded for fourteen years.   The objections are principally to the failure to include as assets the property affected by these gifts.

The contestants themselves offered in evidence three assignments of mortgage, each signed "Frederick Wiemann" and dated October 10, 1918.

The first of these was an assignment of a mortgage upon No. 406 Greenwich street.   It runs to George F. Wiemann.   It was a first mortgage for the sum of $63,000.

First Department, April, 1927.      [Vol. 220

The second also runs to George F. Wiemann. It is an assignment of a second mortgage upon the same premises. This mortgage though originally for $32,000 had been reduced to $23,237.50.

The third assignment of mortgage runs to Albert B. Wiemann, a brother of George F. Wiemann. The principal amount was $50,000.

The assignments are all dated October 10, 1918. They were acknowledged the same day the testator executed his last will.

The executors maintain that the three assignments were properly executed by the decedent and were duly delivered at the same time that the will was executed on October 10, 1918. This, the objectants dispute. They contend that the record does not sustain the findings to the effect that valid gifts *inter vivos* of the mortgages were made. They also challenge a gift of $20,000 in United States Liberty bonds to Clara Pallehner, asserting that these bonds are part of the testator's estate.

The referee found that there was a failure to prove the gift of the Liberty bonds and that the executors should be surcharged accordingly. The surrogate, however, overruled the referee in this respect and held that a gift of the Liberty bonds to Clara Pallehner had been established.

In each instance the assignments recite as consideration the amount of the principal of the mortgage. That to Albert B. Wiemann recites a consideration of $50,000, the first to George F. Wiemann a consideration of $63,000 and the second to George F. Wiemann a consideration of $23,237.50.

The original objections are to the effect, not that the assignments are invalid, but that George F. Wiemann and Albert B. Wiemann had failed to turn into the estate the amounts recited as consideration therein. The objectants assert that the assignees had respectively agreed to pay the said sums for the assignments. This assumed that the mortgages were assigned and was wholly inconsistent with the position, subsequently taken, that the assignments had not been validly delivered.

The executors having moved to dismiss objections Nos. 13, 14 and 15, because of a failure to prove that George F. Wiemann or Albert B. Wiemann had agreed to pay any consideration for the assignments, the objectants changed their position. They obtained leave to amend their objections, adding 13a, 14a and 15a, which set up the invalidity of the gifts in question.

The referee reported that the assignments were validly delivered, and disallowed objections 13a, 14a and 15a. In this respect his report was confirmed by the surrogate.

The gift to Clara Pellehner consisted of twenty Liberty bonds

delivered by the decedent to George F. Wiemann. This gift the contestants say was not made. In this respect the referee sustained the objections, holding that the language of the testator relied upon by the executors was as indicative of a parol trust as of a gift; and that, as a parol trust, it must fail for uncertainty. As to this the referee was reversed by the surrogate, who held that a valid gift was proved in the case of the Liberty bonds as in the case of the assignments of mortgages.

Neither the referee nor the surrogate discussed the contestants' charges of fraud and conspiracy. The referee found that both George F. Wiemann and George Eilers, in their dealings with the testator prior to his death and in their administration of his estate as executors, have at all times and in all their proceedings acted fairly and uprightly and with the utmost good faith; and that the executors have acted as reasonable and prudent persons, exercising diligence and discretion in handling the affairs of the estate.

Peter Cook, as notary public, certified to the testator's acknowledgments of he assignments. They are not otherwise witnessed. Within a few minutes after their execution, the testator signed his last will and testament in the presence of Peter Cook and Clara Pallehner. One Lizzie Johnson was then called into the room and, upon being requested by the testator, Peter Cook, Clara Pallehner and Lizzie Johnson acted as witnesses to the will, signing their names as such.

The testator thereupon handed the three assignments of mortgages to George F. Wiemann, stating to him that two of them covered the property at No. 406 Greenwich street and were for him, and that the third one covered the mortgage on the Regent place property, executed by Bohack, and was for his brother Albert B. Wiemann. At the same time the testator stated to George F. Wiemann that as he was the main proprietor of the business the building ought to be his and that he gave the mortgage to Albert in order to enable him to keep the Bohack trade.

George F. Wiemann took possession of the said assignments and had the two relating to No. 406 Greenwich street in his possession continuously up to the time of the testator's death. He gave the assignment covering the Bohack mortgage to Albert B. Wiemann about the middle of October, 1918; and Albert B. Wiemann requested George F. Wiemann to keep it for him, handing it back to George F. Wiemann. During the month of October, 1918, George F. Wiemann exhibited these assignments to Samuel N. Freeman, an attorney. Shortly before Christmas, 1918, Albert B. Wiemann received the assignment of the Bohack mortgage from George F. Wiemann, and showed it to his wife; thereafter he had it con-

tinuously in his possession up to the time of the death of the testator on January 19, 1919.

It was clearly established that the testator intended to make gifts of the mortgages. The essentials, intention of the donor, delivery and acceptance, were established. (*Beaver* v. *Beaver*, [1889] 117 N. Y. 421, 428.)

At the time of his death Frederick Wiemann, the decedent, was between sixty-five and sixty-six years old. He died at a rooming house conducted by Clara Pallehner, with whom he had resided for fourteen years. During that period she had cooked his meals and attended to all of his personal wants and needs. Of the thirteen nephews and nieces that were the recipients of the testator's bounty by his will, none of them lived with him and, with the exception of George F. Wiemann and Albert B. Wiemann, none of them were on terms of intimacy with him.

He had given George F. Wiemann the key to his safe deposit box in June, 1918. On September 14, 1918, George F. Wiemann took from the vault of the testator in the Mercantile Safe Deposit Company, Liberty bonds of the par value of $20,000. For about ten or fifteen days after this, the $20,000 in Liberty bonds were in the testator's possession. George F. Wiemann took the bonds to his office.

On October 8, 1915, Clara Pallehner took into her home a child named Rose Flugel, who was then homeless. The testator became fond of her, and in very substantial ways showed his interest in her welfare.

On October 10, 1918, at or about the time that the testator handed the three assignments of mortgage herein to George F. Wiemann, he stated in the presence of Peter Cook and of Clara Pallehner that George held $20,000 worth of United States Liberty bonds belonging to Miss Pallehner and that he had given them to her. The testator further stated he realized that with the high cost of living then prevailing the income from $20,000 would not be a very large sum for the support of Miss Pallehner and Rose; that he had dealt very liberally and generously with George and, in case Miss Pallehner or Rose required additional aid, George and Albert ought to help her out, as they received abundant funds from him to carry out his wish. At that time the testator asked George F. Wiemann whether he held the said $20,000 United States Liberty bonds belonging to Miss Pallehner, and George F. Wiemann replied that he did.

These admissions of the testator that George F. Wiemann had the bonds, that they belonged to Miss Pallehner and that he had given them to her, taken in connection with the fact that he had

given them to George, who held them, and the fact that the testator had previously stated he was going to give them to her, together with all the other circumstances, established that delivery had taken place.

The admissions of a decedent tending to diminish his property are competent evidence against his estate in favor of an alleged donee. (*Hurlburt* v. *Hurlburt*, 128 N. Y. 420; *Komitsch* v. *DeGroot*, 80 App. Div. 376; *Moore* v. *Fingar*, 138 id. 929; *Scully* v. *Scully*, 154 id. 359; *Wallace* v. *Wallace*, 158 id. 273; affd., 216 N. Y. 28.)

On January 16, 1919, three days before the testator's death, George F. Wiemann signed and delivered to Miss Pallehner a letter as follows:

" This is to certify that I hold for your safe-keeping, Twenty Thousand Dollars in Third Liberty Loan Bonds which I have put away in our safe at your request.

"As soon as you have the opportunity, I shall be glad to go with you to the Title Guaranty and Trust Company, and assist you all I can to secure for you the Twenty Thousand Dollar Guaranteed Mortgage which you desire to purchase with the above mentioned bonds."

The will makes no mention of the child Rose and she was not the object of any separate gift. The testator's declarations show that in his mind he grouped her with Clara Pallehner who had adopted her and made the gift to the mother. Unless it is held valid there is no provision whatever either for Miss Pallehner or the child.

The testator made various declarations of his intention to make the gift to Clara Pallehner. At first general, these narrowed down to express statements of his intention to make the gift in controversy.

On numerous occasions he indicated that he had assumed some responsibility in connection with the adoption of Rose and intended to provide for her as well as for Clara Pallehner. The testator intended to give and did give these bonds to Clara Pallehner.

There were several other items in the accounting which received consideration, resulting in surcharging the executors. These were properly disposed of by the surrogate.

We believe the decree of the surrogate was in all respects correct and should be affirmed, without costs of this appeal.

DOWLING, P. J., FINCH, McAVOY and O'MALLEY, JJ., concur.

Decree, so far as appealed from affirmed, without costs.