In the Matter of the Compulsory Judicial Settlement of the Account of LESTER C. GILMAN, as Executor, etc., of THEOPHILUS GILMAN, Deceased.

LESTER · C. GILMAN, as Executor, Appellant; MABEL R. GILMAN, Respondent.

Second Department, November 18, 1916.

Will — construction — disposition of residuary estate and remainder of trust fund after termination of life estate.

A testator gave to his executors all the property of which he might die seized or possessed in trust to pay a certain amount to his children, Julia and Percy Gilman, for their lives, and to pay the balance in equal shares to his sons Lester and Ralph until the latter should attain the age of thirty years. At such time the executors were to set aside two separate sums to provide for the payment of income to Julia and Percy, and to divide the residue equally between Lester and Ralph, and upon the death of Julia or Percy to divide the fund set apart similarly between Lester and Ralph. The testator then provided that if either Lester or Ralph "shall die before the division of my estate between them as directed to be made by the third and fourth paragraphs hereof, then the share or interest of the one so dying shall go to his heirs, executors and administrators, absolutely and forever; and if my son Ralph shall die before attaining the age of thirty years, then said division shall take place as soon as my son Lester * * * shall have reached that age." Ralph subsequently married and died in his twenty-sixth year and before the testator. At the death of the testator, Lester was over thirty years of age.

*Held,* that the testator intended that the gift made for the son dying should go to his "heirs, executors and administrators," and that, therefore, the residuary estate and remainder of the trust fund after the termination of the life estate of Ralph belonged in part to his estate.

APPEAL by Lester C. Gilman, as executor, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 24th day of January, 1916, judicially settling his account.

*John J. Crawford,* for the appellant.

*David Joyce,* for the respondent.

PER CURIAM:

The testator gave to his executors the property "of which I may die seized or possessed, together with such other estate,

Second Department, November, 1916.        [Vol. 175.

both real and personal, as to which for any cause I may die intestate," in trust to pay the net income as .follows: To Julia A. Percival, otherwise known as Gilman, $100 per month for her life; to Percy B. Gilman, son, $30 per month for his life (if income proved insufficient, then out of principal); to Lester C. Gilman and Ralph F. Gilman, the balance in equal shares, until Ralph shall attain the age of thirty years. Upon Ralph becoming thirty years old, the executors should set aside two separate sums to provide for the payment of income to Julia and Percy and to divide the residue equally between Lester and Ralph, and upon the death of Julia or Percy to divide the fund set apart similarly between Lester and Ralph. Then comes the 5th paragraph, which makes difficulty. It provides that if Lester or Ralph "shall die before the division of my estate between them as directed to be made by the third and fourth paragraphs hereof, then the share or interest of the one so dying shall go to his heirs, executors and administrators absolutely and forever; and if my son Ralph shall die before attaining the age of thirty years, then said division shall take place as soon as my son Lester   *   *   *   shall have reached that age." The will was made in March, 1905. Ralph married in 1906, and died in 1909, in his twenty-sixth year. The testator died .in 1912, at which time Lester was over thirty years of age.

Ralph's widow, Mabel R. Gilman, who is administratrix of the goods, chattels and credits which were his, was successful in the Surrogate's Court. She attacked the account of the executor on several grounds, two of which are pertinent to this appeal:

(1) That the executor failed to account for 100 shares of stock of the Great Atlantic and Pacific Tea Company, owned by decedent, in addition to 1,298 shares accounted for, and failed to account for the dividends received thereon; which 100 shares the executor claimed as a gift from decedent in his lifetime. This question has been disposed of by the learned surrogate in an opinion which we approve. (*Matter of Gilman,* 92 Misc. Rep. 140.) The other question presented, but not discussed, in that opinion calls for the expression of our view.

(2) That the residuary estate and the remainder of the trust

fund after the termination of the life estate belong in part to the estate of her intestate.

It is presumable that the testator did not intend the gift to lapse, because, for the one reason, and there is more than one, he provided that in case of the death of Lester or Ralph his share or interest shall go to his heirs, executors and administrators. (*Matter of Hall*, 2 Dem. 112.) But the appellant would construe section 5 to read, "if either of my sons surviving me shall die before division, then his share shall go to his heirs," etc. But why interpolate words in the will? It distinctly says "shall die before the division." There is an unqualified limit of time. The consequences of the several constructions are considered in the briefs. The appellant argues that, in the absence of clear intention to the contrary, the testator is deemed never to give to those who do not survive him, and for this cites *Browne* v. *Hope* (L. R. 14 Eq. 343, 347); *Van Beuren* v. *Dash* (30 N. Y. 393, 424) and *Roberts* v. *Bosworth* (107 App. Div. 511). But here the testator says that if a son does not survive to division, his heirs, executors and administrators shall take. It is also said that unless Ralph survived the testator then he would have no interest in the estate to go to his heirs, etc. The suggestion has some merit, but what the testator had in mind, we think, was that the gift made for the son dying should go to his heirs, executors or administrators. The appellant's brief cites cases where the court held that a gift lapsed and that substitutionary clauses in behalf of the donee's children were not intended. The cases were gifts to a person, and in case of his death his children should take (*Smith* v. *Oliver*, 11 Beav. 494, 496), or the gifts were to a person or persons "or to their legal representatives," or similar alternative provisions. (*Thompson* v. *Whitelock*, 4 DeG. & J. 490; *Tidwell* v. *Ariel*, 3 Mad. 403; *Corbyn* v. *French*, 4 Ves. 418, 435.) *Matter of Roberts* (L. R. 30 Ch. Div. 234) seems to have no application. How could a niece exercise a power of appointment unless she survived the testator? The other cases, in our opinion, do not state the law of this State. But there is one consideration urged by the appellant that has weight. The son married and died before the father. His father then was his heir at law and next of kin. Did the father mean that if either Ralph or Lester died, his

father should take from him under the will ? We assume that he thought nothing about it. But we ask a counter question, did the testator think that in case either Ralph or Lester died before him he would die intestate as to that one-half of the corpus, and that Julia A. Percival and Percy Gilman would share in it, although he had given them a limited sum, and that too in trust ? We think that the testator intended Ralph's and Lester's family, in case one of the sons died, to have what the testator had provided him. He probably did not conceive just how he would, in law, be related to it. He did not intend to die intestate, for he willed all property " as to which for any cause I may die intestate." And if he so attempted to project intestate property under his will, he intended it to go as his will provides, and as to the interest in dispute, the will carries that to Ralph, his "heirs, executors and administrators."

The decree of the Surrogate's Court of Kings county should be affirmed, with costs to the respondent payable out of the estate.

THOMAS, CARR, STAPLETON and PUTNAM, JJ., concurred; JENKS, P. J., not voting.

Decree of the Surrogate's Court of Kings county affirmed, with costs to the respondent payable out of the estate.