MARTHA A. GAINES, Individually and as Executrix of the Last Will and Testament of ABIGAIL ANN HUYLER, Deceased, Plaintiff, *v.* FRANK DEK. HUYLER, DAVID HUYLER and COULTER D. HUYLER, Individually and as Executors of the Last Will and Testament of JOHN S. HUYLER, Deceased, and HUYLER BROTHERS, CORPORATION, Defendants.

(Supreme Court, Nassau Special Term, October, 1920.)

Evidence — ownership — possession of non-negotiable instrument with assignment — exception to rule.

   The possession of a non-negotiable instrument, coupled with a written assignment to the holder, is evidence of ownership, except where the relations between the alleged donor and donee were intimate and the latter had access to the donor's property.  (P. 192.)

   The exception to the rule applies particularly where the person in possession claiming ownership is the executor or

trustee of the person who had owned the property and where the possession of the executor is not shown to have existed prior to the owner's death. (P. 192.)

At the incorporation of "Huylers," a certificate for all the stock was issued to the father of plaintiff in payment of machinery, etc., used by the company and which it had purchased of him. *Held,* that said certificate, which was signed and filed by the three incorporators and trustees for the first year, of whom plaintiff's father was one and his son was another, completely defeated the claim of the defendants, that the business originally belonged to the son. (P. 190.)

Upon the immediate surrender of said certificate, three certificates were issued, each for an equal number of shares, one to plaintiff's father, one to his son and one to the other incorporator. In a suit in equity plaintiff claimed that the certificate issued to her father belonged to him at the time of his death, and that subject to the life estate of her mother therein, the shares passed to plaintiff under the residuary clause of her father's will of which the son was the only acting executor. It was conceded that said shares, which are of great value, are now in the hands of the defendants as executors of the son, and the claim is made that they were transferred to him by his father in his lifetime and that upon the death of the son, they passed to his executors under his will. *Held,* that the facts proved did not justify an inference and finding that there had been a delivery of the stock by plaintiff's father to his son. (P. 193.)

The present action was commenced thirty-two years after the transaction in relation to the assignment of the stock to the son, and plaintiff seeks to be relieved of the operation of the Statute of Limitations (Code Civ. Pro. § 382, subd. 5) on the ground that she did not discover the fraud until within a few weeks before commencing the action. *Held,* that under said section of the Code, the burden was upon the plaintiff to show non-discovery of the alleged fraud upon her, and as upon the evidence her claim of lack of knowledge could not be found as a fact, the defendants were entitled to judgment with costs. (P. 194.)

ACTION in equity.

Brush & Crawford (John J. Crawford, of counsel), for plaintiff.

Beals & Nicholson (Edmund L. Mooney, of counsel), for defendant David Huyler.

Kenneth McEwen (John B. Stanchfield, of counsel), for defendants Frank DeK. Huyler and Coulter D. Huyler.

CROPSEY, J. This action is in equity, and, by consent of all parties, was tried in Kings county. The sufficiency of the complaint has been upheld by the Appellate Division upon demurrer, 183 App. Div. 945. The action involves the title to fifty shares of stock of the corporation known as " Huyler's." That corporation was organized in 1881 with a capital of $15,000, represented by 150 shares of the par value of $100 each. At the time of the incorporation, all the shares were issued to David Huyler, the grandfather of the three individual defendants. This was issued, as the certificate then signed and filed showed, in payment of the machinery, etc., used by the company and which it had purchased from David Huyler. This certificate was signed by David Huyler, his son John S. Huyler, and a Mr. Harroun, who were the three incorporators and trustees for the first year. This certificate completely defeats the attempt made by the defendants to show that the business originally belonged to John S. Huyler and not to David Huyler. Upon receiving a certificate for all the shares, David Huyler at once surrendered it and three certificates, for fifty shares each, were issued in its stead. One of these certificates was in the name of David Huyler, one in the name of his son John S. Huyler, and one in the name of Mr. Harroun. It is the certificate which was thus issued to David Huyler that is the subject matter of this litigation. Aside from the possible effect the disposition of the case might have upon the control of the company, the shares themselves are of great value. In 1902, fifteen shares

were sold for $100,000, and the dividends upon those shares, in the succeeding two years, equaled the sum for which they had been sold. In 1919, twenty-one shares were sold for $535,500.

The plaintiff is the daughter of David Huyler, the ancestor, and hence is the sister of John S. Huyler and the aunt of the defendants Huyler who are sons of John S. The plaintiff claims that the certificate in question belonged to David Huyler at the time of his death, and that, subject to the life estate of her mother therein, the shares passed to her under the residuary clause in David's will. The defendants claim that the shares were transferred by David in his lifetime to his son John S., and that, upon the death of the latter, they passed to them under his will. It is conceded that the shares are now in the name of the defendants.

David died in 1885, and the primary determination is whether the shares were David's property at that time, or had been previously transferred by him to his son John S. Death has taken away all who might have testified concerning this matter, but the records show that, on June 10, 1885, David signed his name to the form of assignment printed on the back of the certificate in question, and this signature was witnessed by Mr. Fulton, an attorney, who also wrote in the date. Otherwise the assignment is blank. On June 30, 1885, David made his will, and he died on July 19, 1885, and his will was proved on August 12, 1885. No mention of any holdings in the Huyler company is made in his will. He gives a piece of real estate in New York and two other pieces in New Jersey to his son John S. after the termination of the life estate given to his widow, and, by a residuary clause, gives everything else to the plaintiff, his daughter. David's widow died in 1895, and John S. Huyler died in 1910.

On August 4, 1885 — sixteen days after the death of

David — the certificate for fifty shares, which had been in his name and which he had indorsed as above stated, was surrendered to the corporation, and another certificate, for the same number of shares, issued in its place to John S. Huyler. In all human probability, this suit would never have been started but for the fact that John S. Huyler was one of the executors under his father's will, and, in fact, the only acting executor by his own admission. But, because John S. was the executor and the transfer of the stock was not made to him until after his father's death, the plaintiff claims that, having proved it to have belonged to David shortly before his death, it is incumbent upon John S., or his successors in interest, to account for the stock as a part of David's estate, or, if it is claimed that the stock was given by David to John S. in David's lifetime, to establish that fact.

The mere naked possession of a non-negotiable instrument is not evidence of ownership. *Cuyler v. Wallace,* 183 N. Y. 291. But, if the possession is coupled with a written assignment to the holder, the general rule is that would be evidence of ownership. But, to this general rule, there is an exception where the relations between the alleged donor and donee were intimate, and the latter had access to the former's property. *Matter of Canfield,* 176 App. Div. 554. And this exception applies especially where the person in possession claiming ownership is the executor or trustee of the person who had owned the property and where the possession of the executor is not shown to have existed prior to the owner's death. *Matter of Gilman,* 92 Misc. Rep. 140; affd., 175 App. Div. 185; 220 N. Y. 659. See also *Matter of Perry,* 129 App. Div. 587. In fact, in neither of the defendants' briefs is this disputed. Both briefs recognize that in such a case the executor claiming to own the property must

establish his right to it. The defendants' entire claim upon this branch of the case is that, from the facts proved, the court should infer and find that there had been a delivery of the stock by David in his lifetime to John S. But the facts proved do not authorize such a finding. If the court could indulge in supposition, as do defendants' counsel, the guess might easily be hazarded that David did intend this stock to go to his son John S., and that he had given it to him. There are some circumstances that seem rather significant but none that necessarily lead to that conclusion.

The argument of defendants that there is a presumption of delivery on the date of the assignment is unsound and not borne out by the citations. In all the cases cited (*Aspell* v. *Campbell,* 64 App. Div. 393; *Westchester Mortgage Co.* v. *McIntire, Inc.,* 174 id. 525–527; *People* v. *Snyder,* 41 N. Y. 397–401; *Ewers* v. *Smith,* 98 App. Div. 289; *Ranken* v. *Donovan,* 115 id. 651; *Tausk* v. *Siry,* 110 Misc. Rep. 514), there was proof of delivery and the question under consideration was the date of the delivery, and so the observations made that the date of the paper is presumptive proof of its delivery on that date, must be read remembering the fact that delivery had been established either by proof or concession. Nor is there any merit in the claim that the act of two officers of the Huyler corporation (other than John S.) in signing the certificate in the name of John S. which was issued after David's death in place of the one he had owned, shows they had investigated and determined that the transfer to John S. had been properly made.

But there is another branch to the case. The transaction attacked by the plaintiff took place in 1885. This suit was not commenced until 1917 — thirty-two years later. The plaintiff claims she did not discover the fraud charged until a few weeks before commenc-

ing this litigation, and on that ground she seeks to be relieved of the operation of the Statute of Limitations. Code Civ. Pro. § 382, subd. 5. Under the cited section, the burden of proving that she did not discover the fraud is upon the plaintiff. *Mason* v. *Henry,* 152 N. Y. 529, 539. In other words, when the time had elapsed which would bar her claim, in order to get the benefit of this exception she must bring herself within it and must satisfy the court of the truthfulness of her claim. This the plaintiff has not done. She has testified that she did not learn of the facts until she went with her counsel to the corporation's office in June, 1917, when he examined the stock certificate book. But this contention is not credited. The testimony of Mr. McEwan, as to what transpired at that time, indicates that the plaintiff and her counsel had knowledge of the situation prior to that visit. And this testimony was not contradicted. While this would not prove that the plaintiff had knowledge more than six years before the commencement of the action, it tends to show that the plaintiff was not truthful. It also appeared that, shortly after her father's death, the plaintiff and her mother both complained of the provision made for them, and said they had not been treated fairly. This is significant, for under the will David's widow had a life estate in everything, and the plaintiff was the residuary legatee and devisee of all his property except three pieces of real estate which went to John S., and the accounting in David's estate shows that the residue consisted of considerable personalty as well as realty. What could be the ground of their complaint that they had not been treated fairly if they did not then know that David's holdings in the corporations had been turned over by him before his death or that John S. so claimed? If they did not know that he had ever had any holdings in the corporation, no ground

of complaint is apparent. In 1899, plaintiff became a director in the corporation, and a year later her son was also made a director, and both continued as such until the death of John S., which was in 1910, and her son continued as director for a number of years thereafter. The plaintiff's claim of lack of knowledge cannot be found as a fact. The court, however, does not credit the testimony given by one of the defendants and his stenographer as to a statement claimed to have been made by the plaintiff in 1917 to the effect that she knew her father had owned all the business. Nor is the court of the opinion that the accounting of the David Huyler estate was sufficient to put the plaintiff on inquiry. There is an item in that account showing the receipt by John S. Huyler, as executor, of some money from Huyler's, but the account does not show for what it was received. It does not seem that the plaintiff was obliged to inquire or to endeavor to see the corporation's books. Of course, if she had seen them, she would have learned that David had owned some of the stock of the company in his lifetime, although she would not have learned, as defendants' brief erroneously states, that a part of the money shown in the account came from a dividend on that stock. The ledger shows that David had drawn out all of the dividend that was declared in June, 1885, by the end of that month, and, in fact, at that time his account was slightly overdrawn. The moneys for which his executor accounted were for David's salary for July, for the rent of the Long Branch store for 1885, and for a sale of furniture, etc.

For the reasons stated, the defendants should have judgment, with costs.

*Judgment for defendants, with costs.*