1. EXECUTORS AND ADMINISTRATORS ⬯221—CLAIM AGAINST ESTATE—PROOF.

The evidence to establish a claim against an estate must be clear and convincing, where the claim is based on a personal transaction between decedent and the claimant.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876;  Dec. Dig. ⬯221.]

2. GIFTS ⬯49—PROOF—CORPORATE STOCK—"GIVEN."

That decedent had frequently said in conversations that he had "given" certain corporate stock to his son, afterwards his executor, did not overcome the presumption that decedent remained the owner of the stock until his death, where there was no direct proof of delivery of same to the son, and the circumstances under which the statements were made did not show that decedent had reference to a gift.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 95–100;  Dec. Dig. ⬯49.

For other definitions, see Words and Phrases, First and Second Series, Given.]

In the matter of the judicial settlement of the account of Lester C. Gilman, as executor of the last will and testament of Theophilus Gilman, deceased.  Decreed according to opinion.

See, also, 85 Misc. Rep. 651, 148 N. Y. Supp. 1047; 166 App. Div. 893, 150 N. Y. Supp. 1087.

Brush & Crawford, of New York City (John J. Crawford, of New York City, of counsel), for executor.

David Joyce, of Brooklyn, for contestant Gilman.

KETCHAM, S.  The executor claims that the decedent, his father, gave to him 100 shares of certain stock.  Two witnesses, who are regarded by the court as trustworthy, intelligent, and moderate, testified to repeated declarations by the father that he "had given" to his son the stock in question.

The decedent, prior to these declarations and during his lifetime thereafter, owned many other shares of the same stock, upon which he semiannually collected dividends.  At all times after he acquired the 100 shares involved in the present dispute they yielded the same dividends as were payable upon the other shares of stock and the decedent semiannually received such dividends.  The decedent died on August 26, 1912, and on January 29, 1913, the certificate for this stock was surrendered to the company which had issued it, and in place thereof a new certificate for a like number of shares was issued to the executor in his own name personally.  At that time there was indorsed upon the original certificate the usual assignment and power of attorney which had been signed in blank by the decedent.

[1] The certificate issued to the executor personally was produced upon the trial, obviously by the executor individually.  The delivery by the executor to the company of the original certificate contains no

evidence as to whether it was then in his hands as his own or as the representative of the estate. Where a claim against an estate is based upon a personal transaction between the decedent and the claimant, clear and convincing proof is needed.

[2] The presumption with which this inquiry must start is that the decedent, once the owner of the security in question, remained the owner thereof at his death. There is no direct proof as to the delivery of the stock by the father to the son. Nothing but a balanced negative is afforded by the proffer in evidence of the now existing certificate or by the transaction in which such certificate was issued in exchange for the original. The only fact which may tend to impair the presumption that the stock was owned by the decedent at death is that he frequently said that he had given it to his son. The phrase "I have given" is undoubtedly capable of a meaning which would embrace all the elements of an effectual gift; but the value of the words, whether grammatical or legal, is not the only evidence to be regarded. Where the expression was used colloquially, the personality of the declarant, his relation to the alleged donee, his relation to the subject-matter of the gift, the conduct of either of the parties with respect to the property in question either at the time of the declaration or during the lifetime thereafter of the alleged donor, and all the circumstances which may enlarge, qualify, or define the declaration must be considered, in order that a just conclusion may result as to the significance which the words assumed in the minds of the parties.

Where a parent declares that he has given personal property to a son and at the time of the declaration and thereafter throughout his life keeps the property in his own hands and takes to his own use all the income which it produces, his speech is characterized by his conduct; and his statement, thus interpreted, can only be:

"I have given my son the stock which I keep in my own possession and upon which I am receiving and intend so long as I live to receive the dividends to my own use."

Under the rigor of the rule which requires from the claimant clear and convincing proof in support of his demand, he has not affirmatively established that there was a delivery to him with the intent to effect a gift. The account must be settled accordingly.

Decreed accordingly.