IRVING BANK-COLUMBIA TRUST COMPANY, as Substituted Trustee under a Certain Instrument Dated October 28, 1922, Plaintiff, *v.* LOUIS H. ROWE and Others, as Executors, etc., of LEE A. AGNEW, Deceased, and Another, Defendants.

First Department, June 12, 1925.

Trusts — validity — written instrument duly signed and acknowledged by settlor for benefit of his son constituted valid declaration of trust — not necessary to validity that instrument be delivered to beneficiary or its existence known to any one — trust instrument reserved power of revocation — dealings by trustee with trust fund rebut any presumption of revocation arising from use by him of trust securities — trust instrument was not revoked by will which did not mention trust and was not inconsistent therewith.

A trust for the benefit of the son of the settlor is validly declared by a written instrument duly signed and acknowledged by the settlor, in which he states that in consideration of love and affection and for other valuable consideration, he conveys, transfers and sets over to himself as trustee certain bonds and in the event of his death to a named corporation as substituted trustee for the uses and purposes stated in the instrument.

It was not necessary for the settlor to deliver the trust instrument to the beneficiary or to tell any one of its existence.

Any presumption that might otherwise have arisen that the settlor revoked the trust under the power reserved therein by his use of certain securities set aside by him for the trust was overcome by statements contained in the account of the trust which he kept.

A valid declaration of trust cannot be revoked unless by the expressed intention of the testator either directly or indirectly; therefore, the trust instrument was not revoked by the will of the settlor which did not mention the trust and was not inconsistent therewith.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Merrill, Rogers, Gifford & Woody* [*C. Lansing Hays* of counsel], for the plaintiff.

*Louis H. Rowe,* for the defendant executors.

*Taylor More,* for the defendant Lee A. Agnew, Jr.

Finch, J.:

This is a submitted controversy, upon an agreed statement of facts. It involves the sufficiency of a written declaration of trust and whether there was a revocation of the same by a will subsequently made. Said trust instrument is dated October 28, 1922, and recites that the maker, Lee A. Agnew, " in consideration of my love and affection for my son, Lee A. Agnew, Jr., and for other valuable consideration, do hereby convey, transfer and set over to myself, as Trustee, and in the event of my death prior to the termination of this Trust, then to the Columbia Trust Company, as substituted Trustee, for the uses and purposes hereinafter set forth," certain bonds therein described of the par value of $31,000. It provides in substance for the payment of $10,000 to the beneficiary upon his attaining the age of twenty-one years and the balance to him upon his attaining the age of thirty years, with provisions for other disposition in certain contingencies, and subject to the right of revocation by the creator. Neither the beneficiary nor the Columbia Trust Company, substituted trustee, had any knowledge of the existence of the aforesaid instrument until its discovery subsequent to the death of the said Lee A. Agnew, in a safe deposit box maintained by him.

The first question presented is whether the instrument sets up a valid trust. The general rule in regard to declarations of trust in personal property is stated by Chief Judge Church in *Martin* v. *Funk* (75 N. Y. 134, 138), as follows: " Lord Chief Justice Turner * * * laid down the general principles as accurately perhaps as is practicable. He said: ' I take the law of this Court to be well settled, that in order to render a voluntary settlement valid and effectual, the settler must have done everything which according to the nature of the property comprised in the settlement was necessary to be done in order to transfer the property, and render the settlement binding upon him. He may of course do this by actually transferring the property to the persons for whom he intended to provide, and the provision will then be effectual, and it will be equally effectual if he transfer the property to a trustee for the purposes of the settlement, or declare that he himself holds it in trust for those purposes, and if the property be personal, the trust may, I apprehend, be declared either in writing or by parol.' The contention of the defendant is that the transaction did not transfer the property and that there was no sufficient declaration of trust, and that by retaining the passbooks, the intestate never parted with the control of the property. If what she did was sufficient to constitute herself a trustee, it must follow that whatever control she retained would be exercised as trustee, and the right to exercise

it would not be necessarily inconsistent with the completeness of the trust."

In the case at bar the settlor adopted the method of declaring that he himself held the property for trust purposes and hence created a valid declaration of trust. In such a case delivery of the trust instrument to another is not necessary nor is it necessary that the beneficiary should be notified. In *Stoehr* v. *Miller* (296 Fed. 414, 423) it is said: " It is undoubted that a person intending to make a voluntary disposition of property for the benefit of another may accomplish his purpose in either of the following modes: * * * (3) By declaring himself a trustee for the donee. 2 Pomeroy's Eq. Jur. § 997 * * *. And we do not doubt that where the third mode has been adopted it is not essential that the declaration of trust should be delivered to a third person or that the *cestui que trust* should have been informed of the trust." Nothing was left undone by the settlor in this case necessary to complete his intention to constitute such a trust. Not only was this so in connection with the inception of the trust, but as he dealt with the same from time to time, he was careful to leave no doubt as to his intention respecting the validity of the trust. For instance, when he took certain securities from the trust, he left with the written declaration of trust a memorandum signed by him, reading as follows: " The securities named in Trust Fund Agreement to my only child (Lee Albert Agnew, Jr.) are not herewith & if any of these are not in my ' S-K ' Acct. with this bank or are not with Harriman & Co. I wish to make the Trust account good by making the change of securities into N. Y. Westchester & Boston 4½ Bonds." This memorandum is dated May 28, 1923, seven months after the execution of the trust instrument and unequivocally recognizes the same; states where the trust property is to be found, namely, in an " S-K " account, which Lee A. Agnew then maintained in the National City Bank; expresses an intention to replace any missing bonds by New York, Westchester and Boston 4½s, $30,000 of which bonds were at that time included in said safe-keeping account. This memorandum and its implied acknowledgment of a duty to replace any missing securities rebuts any presumption of an intention to revoke the trust which otherwise might have been raised by the fact that certain of the securities named in the trust had been used as collateral in a margin account maintained by Lee A. Agnew with stockbrokers and which securities were sold for his account. While it does not appear that any income received by Lee A. Agnew from the securities of the trust fund was used as such income in behalf of his son, the beneficiary, yet there is a record of expenditures on behalf of his son in excess of such

income. It further appears that one Edwin M. Koelbel, assistant cashier of the Gotham Bank, where Lee A. Agnew had an account, had had delivered to him by Lee A. Agnew a copy of the trust instrument. Said Koelbel was accustomed to assist Agnew in making out his income tax returns, and for the income returned by Agnew for the year 1922 there was made the following deduction: "Less $970, a/c Trust Fund acc't. 970." Said amount of $970 represents the proceeds of the coupons of the bonds covered by the declaration of trust, including an item of $250 representing coupons on bonds not mentioned in the instrument. These facts all point unmistakably to the conclusion that it was the intention of Lee A. Agnew not only to declare a trust for the benefit of his son but scrupulously to carry out the same. He carried out his original intention by a carefully drawn instrument, duly acknowledged before a notary public, and thereafter he continuously recognized this instrument by unequivocal written evidence.

The defendants seek to rely on a line of cases where a settlor started to create a trust in a particular manner but failed to do the necessary acts to complete his intention. Thus, in *Govin* v. *DeMiranda* (76 Hun, 414) the settlor signed and acknowledged the trust instrument in which he sought to create the trust by transferring and delivering to a trustee certain certificates, but the settlor did not deliver the instrument and the court quite properly held that this act was "more consistent with the idea of an uncompleted purpose than of one which has been carried into final effect." In that case it was urged that although the settlor had failed to create a trust by a transfer of the property to a trustee, nevertheless the instrument could be construed as a declaration by the testator that he held these certificates himself as a trustee and hence as a valid declaration of trust. The court, however, pointed out that there was no evidence of an intention on the part of the settlor to create a trust by declaring himself a trustee and that the only evidence of his intention was that he intended to create a trust by conveying the property, and as to that the purpose had been uncompleted. In the case at bar, as already noted, there never was any intention of the settlor to make other than a valid declaration of trust, and as to this his purpose was fully completed.

There being no question, therefore, but that there was created a valid declaration of trust, we are brought to the next question, as to whether this trust instrument was revoked by the will of Lee A. Agnew. Here, also, the question involved is one of intention. The will, after making certain small bequests, leaves all the residue of the testator's property in trust during the life of Lee A. Agnew, Jr., the income to be applied to his use either in whole or in part

in the discretion of the executors and trustees, any residue of such income to be paid to the mother of Lee A. Agnew, Jr., the former wife of the testator. It thereby provides first for the care and maintenance of the son during his life, and second for his former wife out of any residue of income during the life of his son, the wife to have the income should she survive the son and the son leave no issue. If the son should leave issue the remainder was to go to such issue, but should the son predecease the testator's wife, leaving no issue, the remainder was then to go to the next of kin of the testator. It is impossible to see any inconsistency between this will and the declaration of trust. The will is designed to insure the care of the testator's son during his life through the administration of the income by the executors, the testator disposing of the remainder. The trust instrument, on the other hand, is designed to set up, out of the testator's property, a particular fund to provide a cash income for the son and for the payment of the principal to him in cash during his life, with the power in the son to dispose of the remainder by will. Thus, by the declaration of trust, the son is protected by a small income, payable absolutely to him, and through the will, the executors are empowered to administer the income in their discretion without any provision for any cash payments to the son. The first thought of the testator was clearly to make a provision for his son, and unless he had provided in any event for his son through the trust instrument, it would seem most unlikely that he would put it within the power of his executors and trustees to withhold all income from the son in their discretion, as provided in the will, should he not be incapacitated, and as would result if the trust instrument were held invalid. It is not necessary, however, to speculate as to the wishes of the testator, since it is clear that a valid declaration of trust cannot be revoked unless by an expressed intention of the testator either directly or indirectly. Since in this case, no reference whatever is made in the will of the declaration of trust, there is no expressed intention to revoke the same, and since there is no inconsistency between the trust instrument and the will, there is no indirect intention to revoke the same.

In *Morris* v. *Sheehan* (234 N. Y. 366) it was held that where testator in his lifetime made a deposit in a savings institution in his own name in trust for plaintiff, who had no knowledge of such deposit, and at testator's death this deposit still stood as originally made, unrevoked and unchanged, and undisposed of by the will of testator, except as it may have been included in a general residuary bequest, a presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor,

but this presumption may be contradicted by evidence as to the circumstances under which the deposit was made.

Even stronger would the presumption be against the revocation of a formal declaration of trust than against a mere deposit in a savings bank in the name of a depositor as trustee for another, since as to the latter case, as was said in *Matter of Totten* (179 N.. Y. 112, 122): " We cannot close our. eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership. It is attributable to various reasons; reasons connected with taxation; rules of the banks limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest where there is a discrimination based on the amount of deposits, and the desire on the part of·many persons to veil or conceal from others knowledge of their pecuniary condition."

It follows that the plaintiff. is entitled to judgment against the defendant executors directing them to turn over and deliver to the plaintiff the bonds covered by the declaration of trust which are in their possession, and the income thereon, together with the proceeds of the sale of such of the bonds enumerated in the declaration of trust as have been sold, together with such interest as has accrued thereon since the date of the sale.

CLARKE, P. J., DOWLING, McAVOY and MARTIN, JJ., concur.

Judgment directed for the plaintiff against the defendant executors as indicated in opinion. Settle order on notice.