In the Matter of the Judicial Settlement of the Intermediate Account of Proceedings of ELLIOTT L. BROWN, as Executor, etc., of J. ROMAINE BROWN, Deceased.

Surrogate's Court, Westchester County, December 10, 1927.

Executors and administrators — accounting — executor received and retained sale price of two parcels of real estate, title to which was in realty corporation, stock of which was owned by testator — executor claims that two instruments signed by his father constituted declaration of trust in support of gift of real estate and vested property in him — gifts — legal essentials stated — evidence does not substantiate finding papers were delivered to son — testator could not create trust in property when, at time of making memoranda, property was owned by realty corporation — corporation was only legal owner which could operate and declare trust, although testator owned all capital stock of corporation — court will not infer existence of gift — son surcharged with amounts he personally received from purchasers of property — check for $5,000 was gift to son — check of $17,000 was not gift — bank stock was not given to son.

On this accounting objection is made to the reception and retention by the executor individually of the sale price of two parcels of real estate title to which was in a realty corporation, and all the stock of which was owned by the testator. The executor claims that two instruments signed by the testator in his lifetime, and offered in evidence, to the effect that testator had given the properties to his son, the executor, and that while title to the properties should stand in the name of the realty corporation it should " be made over to him at any time he requests," constitutes a declaration of trust in support of a gift and the statute operating on the passive trust (Real Prop. Law, §§ 92, 93) transferred the legal title to the donee so that the son might at any time have called upon the corporation to make conveyance of the properties. The writings were in testator's handwriting, no question as to the genuineness of which was raised. One of the papers was signed by testator as president of the realty corporation.
Elements and legal essentials of a valid gift by a testator to his son stated.
The papers relied upon by the executor to have any force even as a declaration of trust must have been delivered in the lifetime of the testator, so that in the

55

absence of evidence as to their delivery there can be no finding that title to the property vested in the executor.  The fact that the executor had the papers in his possession, and that he produced them on the trial, is not sufficient to warrant an inference that the testator delivered the papers to his son.

The testator could not create a trust in one of the parcels of property, for, at the time of the making of the memorandum upon which the executor relies, the property was owned by the realty corporation, and, as such, it was the only legal owner who could operate pursuant to section 242 of the Real Property Law, and declare a trust.

Notwithstanding the fact that the testator owned all the capital stock of the realty corporation, he did not own the property, for the owner of all the capital stock of a corporation does not thereby become the legal owner of its property; while the corporation exists, such a person is a mere stockholder of it and nothing else.

Furthermore, the informal memoranda omit the declaration and intention to create a trust, and, consequently, can only be regarded as an engagement that the property was to belong to the son at some future time.  Moreover, since a trust was not legally made, it cannot be upheld, and the gift never having been perfected the court will not infer its existence.

The son, as executor, therefore, must be surcharged with the amounts he personally received from the purchasers of the real estate.

A check of $5,000, drawn on a designated bank, to the order of " cash " and deposited in the son's account, was a gift, where the evidence shows that testator, a fortnight before he died, directed the drawing of the check after he had stated that he wanted to give his son some cash.  A second check for $17,000 cannot be held to have been a gift, in the absence of proof that it was intended as such, and the executor must be surcharged with the amount thereof.

Ninety shares of bank stock, which the executor claims his father gave him, belong to the estate, in the absence of affirmative proof by the son that the stock was delivered to him with the intent to effect a gift.

PROCEEDING for the intermediate settlement of the account of Elliott L. Brown, as executor of the last will and testament of his father, J. Romaine Brown, who died a resident of Yonkers, November 5, 1924.  The will is dated July 12, 1924.

*Russell W. Leary* [*Henry W. Jessup* of counsel], for accounting executor.

*Middlebrook & Sincerbeaux* [*Frank H. Sincerbeaux* of counsel], for legatees.

*Larkin, Rathbone & Perry* [*Albert Stickney* and *Albert Maginnes* of counsel], for Central Union Trust Company, a trustee.

*David S. Murden*, special guardian.

SLATER, S.  Paragraph " fourth " of the will gives the rest, residue and remainder of the estate to the Central Union Trust Company and the executor, as trustees, to be by them divided into two portions to be held in trust upon two separate trusts.

Fund A of the residuary estate is given to said trustees to hold

Misc. 865]   Surrogate's Court, Westchester County, December, 1927.

in trust for the life of the son, Elliott L. Brown, and until the youngest of his children born during the testator's lifetime who may survive the said son shall have attained the age of forty years, or shall sooner die.   The net income from trust fund A shall be paid to the son so long as he shall live.   In the event of his death before his youngest child born during testator's lifetime shall attain the age of forty years, or sooner die, the said income shall upon the death of the son be paid by said trustees *per stirpes* to the children of the son who shall survive him and to the issue, if any, of any child of said son who shall have previously died leaving lawful issue him or her surviving, said issue to take *per stirpes* and not *per capita*.   In the event that, on the termination of said trust, there shall then be living no direct lawful descendants of said son, the principal of fund A is given to the lawful descendants of the daughter, Josephine B. Scribner, with the exception, however, of her son Gilbert H. Scribner and his descendants.

Fund B of the residuary estate is to be held by the trustees for the life of the daughter, Josephine B. Scribner, and until her son David Stauffer Scribner shall have attained the age of forty-three years, or shall have sooner died.   The income of said fund B is to be applied by the trustees as they may from time to time consider proper or expedient for the support and maintenance of the daughter and her children, and to accumulate any unexpended income until the termination of said trust, or until in their discretion they shall consider it wise and proper to pay out or apply the same for the benefit of said daughter and her children.   Upon the daughter's death, said trustees shall pay out so much of the net income of trust fund B as they may from time to time consider proper and expedient for the support, maintenance and education of the children of said daughter, and the issue of any deceased child of said daughter who may have previously died leaving lawful issue him or her surviving, and accumulate any unexpended balance until the termination of said trust, excluding, however, from any participation in the income of trust fund B, or the principal thereof, said Gilbert H. Scribner and his descendants. Upon the death of said daughter, the principal of said trust fund B shall pass to her children, excepting Gilbert H. Scribner and his descendants, and the issue of such of her children as may have died prior to the expiration of said trust, leaving lawful issue him or her surviving.   If, at the expiration of said trust, there shall be living no direct descendants, other than Gilbert and his descendants, the principal of fund B shall pass to the lawful descendants of the son, Elliott L. Brown.

The portion of fund B shall be less the aggregate amount of the

Surrogate's Court, Westchester County, December, 1927.     [Vol. 130

sums heretofore advanced and expended either as purchases for the amount of, or as loans to said daughter, it being the testator's intention to charge against such portion of the residuary estate all advancements already made on her behalf.

The will appoints the son, Elliott L. Brown, as executor. The 6th paragraph of the will leaves a vacant line, indicating the intended appointment of another executor, who, however, was not named at the time the will was executed.

The 7th paragraph of the will names the son and the Central Union Trust Company as trustees of the trusts created.

In providing for the deduction of advancements to the daughter, the testator evidenced a desire for equality of distribution of his estate between the son and daughter. This thought has its reflection upon the issues involved herein, as only four months intervened between the making of the will and the period when the gifts of money and stock were made, as claimed by the son-executor.

The special guardian of the infant children of the two life beneficiaries, and the Central Union Trust Company, cotrustee, with the son, have presented objections to the account with regard to the Rockwood street lots and 1349 MacCombs road property; the Arden property; concerning a gift of real property situate on the west side of Broadway, the titles to which were in The Nod-A-Way Co., Inc., at the time of the testator's death; with regard to the payment of the so-called Katharine Shrady mortgage; the conveyance of 62 Beechwood terrace property; with regard to two certain checks, one for $5,000 and another for $17,000; and with regard to ninety shares of the stock of the Bank of Washington Heights, because these items were not included in the account as assets.

The objections filed by the trust company were in two forms: *First*, an objection to the statement of the value of the Nod-A-Way Company shares in the executor's account, in that it did not reflect the increase resulting from the inclusion in the assets of the company of the parcels of real estate, of which the Nod-A-Way Company was divested by action of the executor. (*General Rubber Co.* v. *Benedict*, 215 N. Y. 18, 22.) *Second*, in that the account failed to charge the accountant with the cash and the mortgages which the executor received on these transfers of corporate real estate, and which were not brought into his accounts as assets of the estate. (*Matter of Schroeder, No. 1*, 113 App. Div. 204; affd., 186 N. Y. 537; *Slater* v. *Slater*, 114 App. Div. 160; *Matter of Fisher*, 124 Misc. 836.)

Under date of October 22, 1925, following the testator's death, the accounting executor, as an individual, entered into a contract

of sale of the Rockwood street property, the title to which was in the Nod-A-Way Company, for a consideration of $29,000. The property was transferred by the Nod-A-Way Company, and the executor individually received and retained the consideration therefor.

The MacCombs road property, under date of January 30, 1926, was contracted to be sold for $30,000, and the executor retained the consideration therefor. The property was transferred by deed from the Nod-A-Way Company.

The directors of the Nod-A-Way Company at the time of the transfers in question were the executor; Robert J. Murphy, former secretary of the testator, and the executor's counsel, Russell W. Leary. The executor was the president of the company.

The accounting executor depends upon two certain documents signed by the testator in his lifetime offered in evidence, claiming that these paper writings were effective to constitute a declaration of trust of the real estate under which Elliott L. Brown might at any time have called upon the corporation to make a conveyance of the properties.

The executor in his proceedings of account made disclosure with regard to his claim of gift of the real estate, claiming title thereto as the reason they were not accounted for as property of the decedent. The executor, however, did not take occasion in said account to refer to his claim of gift of the two checks and the bank stock. He disclosed the claim to these items to the special guardian.

Hence, the issue relates to one of gift, the executor contending the several real and personal properties were legal gifts to him by his father. This is challenged by the objectors and the question presented to the court is the sufficiency of the proof supporting the alleged gifts.

For completeness, the court will state that the executor appealed to the Appellate Division from an order made by this court on the 13th day of April, 1927, denying the motion of the executor to strike out four of the objections made by the special guardian. The order of the court denying the motion to strike out and dismiss four objections to the executor's account was modified by the Appellate Division by striking out and dismissing the fourth objection upon the ground that the surrogate was without power to make a decree affecting the title to that specific property, and as so modified, the order was affirmed. (*Matter of Brown*, 129 Misc. 293; 221 App. Div. 772.)

The testator had reached the ripe age of ninety-one years at the time of his death, had been actively engaged for over a half century as a real estate broker engaged in the business of buying

and selling real property for himself and others in New York city and adjacent territory, with offices in New York city, in later years with the son-executor as a partner. He accumulated thereby a vast estate. As the city grew, so did his wealth. No question was raised upon the trial as to his mental capacity to make a gift, and the court concludes that he was competent to make gifts. While feeble as most folks are at his age, his intellect was keen. His last illness began October 1, 1924, and from that time on he was attended by nurses. His wife had predeceased him.

The personal property in controversy was concededly owned by the testator in his lifetime until within two or three weeks of his death, which occurred on November 5, 1924. Considerable importance is to be attached to the fact that the personal property in dispute was owned and possessed by the testator up to within a short time before death. (*Matter of Watson*, 215 N. Y. 209, 214; *Matter of Perry*, 129 App. Div. 587.) The presumption is that his ownership continued, and the burden of establishing a gift by the testator rested on the claimant. (*Matter of Housman*, 224 N. Y. 525; *Matter of Canfield*, 176 App. Div. 554; *Matter of Cofer*, 121 Misc. 292; *Matter of Humphrey*, 183 N. Y. Supp. 133; *Matter of Crook*, 190 id. 285.)

In the abundant and able legal treatise, Jessup-Redfield's Surrogate's Practice (at p. 1020), the learned author says: " The factor of importance is whether the subject of the gift, whether in trust or not, *is a part of the estate assets after decedent's death.*" (Citing opinion of FOLEY, S., in *Matter of Valentine*, 122 Misc. 486.) Again (at p. 1584, § 1127), he further discusses the question of the jurisdiction of the surrogate, saying: " Where the existence of other assets is alleged, for which the representative has not accounted, the surrogate has, of course, jurisdiction to determine the question. So, to illustrate, if the representative, admitting that the articles referred to belonged to the decedent, claims a gift by the decedent to him before death, the surrogate has jurisdiction to determine the question of a gift as necessarily incidental to the settlement of the accounts, and making a decree for distribution."

The law books are filled with decisions indicating the necessary elements of a valid gift — the essentials being donative intent and executed delivery. A mere intention to make a gift confers no rights. The intention must be executed by delivery. (*Matter of Miller*, 204 App. Div. 418, 424.)

To prove intent, evidence of prior declarations of the donor is competent, as well as specific declarations in the nature of admissions tending to diminish his property. (*Wallace* v. *Wallace*, 158 App. Div. 273; affd., 216 N. Y. 28; *Matter of Wiemann*, 220 App. Div.

276, 281.)   The rule that less positive proof is required to establish the delivery of a gift from parent to child than as between persons not so related does not obtain where the child has access to the property.   When a confidential relationship exists, an added burden is imposed upon the claimant to show the gift was freely and voluntarily made.   (*Cowee* v. *Cornell,* 75 N. Y. 91, 99, 100; *Matter of Booth,* 215 App. Div. 516, 521.)

The mere naked possession of a non-negotiable instrument is not evidence of ownership.   (*Cuyler* v. *Wallace,* 183 N. Y. 291.)   If the possession is coupled with a written assignment, the general rule is, that would be evidence of ownership.   But to this rule, there is an exception where the *relation between* the alleged donor and the donee was intimate and the latter had access to the former's property.   (*Matter of Canfield,* 176 App. Div. 554.)   And this exception applies especially where the possessor is the executor or trustee.   (*Matter of Gilman,* 92 Misc. 140; 166 App. Div. 893; 214 N. Y. 666; *Matter of Perry,* 129 App. Div. 587; *Gaines* v. *Huyler,* 113 Misc. 188; affd., 206 App. Div. 777; 239 N. Y. 611.)

The requirement of delivery is founded on public policy to prevent mistake and imposition.   (*Young* v. *Young,* 80 N. Y. 422; *Beaver* v. *Beaver,* 117 id. 421.)   But the rule requiring actual delivery is *not inflexible.*   (*Matter of Van Alstyne,* 207 N. Y. 298; *Matter of Mills,* 172 App. Div. 530; affd., 219 N. Y. 642.)   The *necessity of delivery* where gifts resting in parol are asserted against the estates of decedents, is *obvious.*

In a case where donations were made, but no delivery of any kind shown, the facts should be carefully scrutinized.   (*Matter of Lewis,* 123 Misc. 115.)   Where the gift is evidenced by a writing, the ordinary rules as to delivery are somewhat relaxed.   Otherwise, the rule as to delivery is strict.   (*Matter of Goodwin,* 114 Misc. 39; *Matter of Cohn,* 187 App. Div. 392; *Hawkins* v. *Union Trust Co.,* Id. 472.)

To sustain the gift, there must be among other things such a delivery as will vest in the donee control and dominion over the objects of the gift.   (*Ridden* v. *Thrall,* 125 N. Y. 572; *Matter of Adler* v. *Levene,* 191 App. Div. 40; *McGuire* v. *Murphy,* 107 id. 104; *Van Cleef* v. *Maxfield,* 103 Misc. 448; affd., 186 App. Div. 906; 28 C. J. 701.)

The claimant is not required to prove his case by more than a preponderance of evidence.   The responsibility of determining whether the evidence is clear and convincing rests with the trier of the case.   (*Matter of Sherman,* 227 N. Y. 350; *Ward* v. *N. Y. Life Ins. Co.,* 225 id. 314, 322; *Caldwell* v. *Lucas,* 233 id. 248.)   The gift need not be proved beyond suspicion.   (*Lewis* v. *Merritt,* 113

Surrogate's Court, Westchester County, December, 1927.    [Vol. 130

N. Y. 386; *Matter of Adler,* 107 Misc. 574, 581.)    Testimony of relatives, servants or interested parties is insufficient.    (*Killian* v. *Heinzerling,* 47 Misc. 511; revd., on other grounds, 114 App. Div. 410; *Matter of Schroeder, No. 1,* 113 id. 204; affd., 186 N. Y. 537; *Matter of McMillan,* 167 App. Div. 817; affd., 218 N. Y. 64; *Ennis* v. *Chichester,* 187 App. Div. 53, 71, 72; affd., 227 N. Y. 663; *Matter of Buoninfante,* 125 Misc. 907; *Matter of Van Vranken,* 120 id. 280; *Matter of Davis,* 128 id. 622, 625.)    The principle applicable to alleged agreements applies with equal force where title by gift is claimed.    (*Hamlin* v. *Stevens,* 177 N. Y. 39; *Rosseau* v. *Rouss,* 180 id. 116.)

The law does not presume in favor of gifts, but requires proof. There is no presumption of delivery.    (*Matter of Bolin,* 136 N. Y. 177; *Matter of Loewi,* 75 Misc. 57; *Newell* v. *National Bank of Norwich,* 214 App. Div. 331; *Gaines* v. *Huyler,* 113 Misc. 188; affd., 206 App. Div. 777; affd., 239 N. Y. 611; Jessup-Redfield Surr. 993, 1209.)

With the restatement of the legal essentials the court will proceed to analyze the facts to ascertain whether valid gifts were made, first disposing of the less serious objections.

Objection 3 of special guardian's objections relates to the Arden property, so called.    This objection is dismissed, as the proof is ample that the executor's one-tenth interest in this real property was acquired by him by a certificate of interest executed in proper form by the officers of the company and under its seal.

Objection 4, affecting property on the west side of Broadway, north of Two Hundred and Fourth street, is dismissed.    *Matter of Brown (supra),* heretofore referred to, is a motion in this proceeding.

Objection 5 relates to a first mortgage held by one Katharine Shrady upon the property 1349 MacCombs road.    The witness Murphy testified that " Mr. Brown in June, 1924, told him he wanted to pay this mortgage off; that he had given the property to Elliott and wanted to give it to him free and clear."    The Nod-A-Way Co., Inc., cash book on July 3, 1924, contains an entry of a payment of $8,000: " MacCombs Road — Charge J. Romaine Brown account."    The testator had a right to pay the mortgage upon his own land.    If the gift was valid, then he, likewise, had the right to make the contribution of $8,000 to cancel the mortgage. The objection is dismissed.

Objection 6 relates to a mortgage on 62 Beechwood terrace, the home of Elliott L. Brown.    The testimony is ample that testator satisfied this mortgage, as he had a right to do, with the intention of making a gift to Elliott.    This objection is dismissed.

Objection 10 is dismissed, as the matter referred to has been

Misc. 865]    Surrogate's Court, Westchester County, December, 1927.

adjusted by the executor filing a supplemental schedule N, regarding the distribution of assets of the Nathan Realty Corporation.

Thus leaving for consideration objection 1, relating to the Rockwood street lots; objection 2 relating to 1349 MacCombs road real estate; objection 7 relating to the check of $5,000; objection 8, relating to the check of $17,000; objection 9, relating to the ninety shares of the stock of the Bank of Washington Heights.

As to the *Rockwood Street property:* Schedule M sets forth items of real estate claimed to be owned by Elliott L. Brown, the executor, title to which was carried in the name of The Nod-A-Way Co., Inc.   The Rockwood street property was conveyed by the decedent to The Nod-A-Way Co., Inc., by deed dated *May 9, 1922*, recorded *May 31, 1922.*   Annexed to the account of proceedings is a copy of a paper writing, the original of which was offered in evidence, dated *June 2, 1922*, as follows:

" This is to certify that the property known as vacant lots Concourse and Rockwood Street deeded to Nod-A-Way Company *is property Elliott L. Brown.*   Any taxes and assessments against said property to be paid by me or out of estate.   Also the improved property on MacCombs Road *is to be conveyed* to Nod-A-Way Co. and held by said company subject to a mortgage of $8,000, and *it is to belong to Elliott L. Brown.*

" Witness,                    (Sgnd)     J. ROMAINE BROWN.
      " ANNIE E. BROWN."

(Note:  Italics by the Court.)

Also, in the year 1923, the following paper was signed by J. Romaine Brown:

" This is to certify that *I have given to my son* Elliott L. Brown all my right, title and interest in that certain property known as Rockwood Street property in Block 2836 and Lots 21–22, 26 and 27 on North side of Rockwood Street and west of Grand Concourse, Borough of Bronx, and any right, title or interest in any adjoining streets, and I am to pay all taxes, assessments or Tax Sales with interest after 1923.   Said property stands in the name of Nod-A-Way Co., Inc., and I direct the property to be made over to him at any time he requests.

                    " J. ROMAINE BROWN,
                            " *President of Nod-A-Way Co., Inc.*

" P. S.   I have made this statement at many times, but for fear that there may be some doubt or dispute I have put it in my own hand.

" 1923.                          J. ROMAINE BROWN."

(Note:  Italics by the Court.)

Copies of the paper writings were made a part of the account of proceedings, the originals of which were offered in evidence upon the trial. No question was raised as to the genuineness of the handwriting of the testator. The Nod-A-Way Co., Inc., was a realty corporation, all the stock of which was owned by the testator. It cannot be said that the paper of 1923 is a corporate act. (Real Prop. Law, § 309; *Maroney* v. *Cole*, 52 Misc. 451; *Goodman* v. *Marx*, 201 App. Div. 386.) It was the individual act of the testator. (*Bush* v. *Gilmore*, 45 App. Div. 89; *Casco Nat. Bank* v. *Clark*, 139 N. Y. 307.)

The executor contends that the letter or memorandum of June 2, 1922, and the memorandum dated 1923, are sufficient evidentiary facts of a transfer of the equitable title to the Rockwood street lots and the MacCombs road property; that they constitute a declaration of trust, in support of a gift, and the statute operating on the passive trust transferred the legal title to the donee. (Real Prop. Law, §§ 92, 93.)

It will be observed that the Rockwood street property was conveyed to the realty company in May, 1922, the memoranda being subsequent thereto.

In my judgment, there are three legal reasons why the Rockwood street lots should be included as an asset of The Nod-A-Way Co., Inc., inuring to the benefit of the estate, and sufficient to defeat the claim of gift made by the executor.

Before consideration is given to the contention whether a trust was, or was not created to take effect as a conveyance, proof of the *delivery of*, or the acknowledgment by the maker of the paper must be established by the claimant. The paper writings relied upon by the son must have been delivered by the testator.

In *Govin* v. *DeMiranda* (76 Hun, 414) VAN BRUNT, P. J., decided with reference to a paper writing by saying: " But there is another requisite which is equally necessary to its due execution, namely, its delivery. * * * Applying this rule to the facts of the case at bar, the signing and acknowledgment of the instrument in question without delivery did not complete its execution. * * * Such transfer never having been completed by delivery, it is clear that the deceased never parted with his title. * * * In the instrument which was the foundation of the right to recover in that case [meaning a case cited to the court], there was an *acknowledgment* by the deceased that he held in his possession property which belonged to the plaintiff in that action. * * * In no case has it ever been held as yet that a party may, by transferring his property from one pocket to another, make himself a trustee. In every case where a trust has been established the party creating

it has placed the evidence thereof in the custody of another, and has thereby shown that it was intended to be a completed act. In the case at bar the deceased kept all the evidence of transfer within himself, which is more consistent with the idea of an uncompleted purpose than of one which has been carried into final effect." (Cited in *Matter of Walcutt*, 18 F. [2d] 362.)

The facts of the instant case are not within those recited and the law applied in *Irving Bank-Columbia Trust Co. v. Rowe* (213 App. Div. 281).

The exception to the rule of law requiring delivery has to do with the peculiar estate created in a bank deposit by the husband, changing the account so as to stand in the name of himself and his wife. Such a transaction is not strictly a gift *inter vivos* or *causa mortis* and delivery is neither necessary, nor practical, as the husband retains control and the right of disposition during his life. (*West v. McCullough*, 123 App. Div. 846; affd., 194 N. Y. 518.)

There is not a scintilla of evidence as to delivery of the two memoranda affecting the real property. The papers relied upon by the executor to have any force, even as a declaration of trust must have been delivered in the lifetime of the testator. The executor offered them on the trial, and they were received in evidence. Their production by counsel for the executor is no proof of delivery. The relationship of the parties is such that it must be assumed that the son had access to the decedent's papers. In fact, as executor, he had possession of the papers of the estate. Because of this, his possession of these two documents proves nothing in derogation of the ownership of the land by the decedent, or the realty corporation. For the executor to offer testimony of possession and ask to have it relied upon as evidence of delivery would be a personal transaction with the decedent. (*Richardson v. Emmett*, 170 N. Y. 412.) It is not proper evidence from which an inference can be drawn that the testator had delivered the memoranda in writing. Consequently, there can be no probative effect to the mere production of the papers. There can be no inference of delivery from his having possession. (*Matter of Canfield, supra; Matter of Humphrey*, 183 N. Y. Supp. 133.)

The legal proposition of corporate entity must also be surmounted by the claimant before the question whether a trust was created is considered. The court cannot concur in the legal theory advanced by the distinguished counsel for the executor that a trust in the Rockwood street property was created by the testator, because *he did not own it* at the time of the making of the memoranda. The Nod-A-Way Co., Inc., owned the Rockwood street

lots, and the company was the legal owner who only could operate pursuant to section 242 of the Real Property Law, and declare a trust.    There are no cases in this State where corporate entity is disregarded, and the property of a company considered the property of even a single stockholder, unless fraud is shown to exist.

The witness Mrs. Bigelow testified that " he told me in the fall of 1923 *he was going to give* him [Elliott] property on the Concourse and Rockwood Avenue.    I think it was as a gift and bank stock." As he had conveyed the Rockwood street lots to The Nod-A-Way Co., Inc., in May, 1922, Mrs. Bigelow's testimony is valueless, and sustains the view that related conversation testimony is the weakest.

The doctrine of corporate entity cannot be disregarded.    (*Matter of Bush*, 124 Misc. 674.)    We cannot and should not in the instant case look beyond the corporate form to the purpose and to the officers who are identified for that purpose.    (*Farmers' Loan & Trust Co.* v. *Pierson*, 130 Misc. 110, 116, 117, and cases cited.)

Professor I. Maurice Wormser long ago wrote upon this interesting legal question (12 Columbia Law Review, 496, June, 1912), and but recently enlightened the bar on the " Disregard of the Corporate Fiction, When and Why," in a lecture delivered at the Association of the Bar, November 10, 1927.    (See 1 Fletcher's Cyclopedia of the Law of Private Corporations, §§ 42–48.)

The leading case on the subject in this State is *Brock* v. *Poor* (216 N. Y. [1915] 387), where Judge HISCOCK, writing for the court, said: " I think that there may properly be cited [other cases] as indicating the force and comprehensiveness of the rule that corporate existence is not lost through mere corporate inaction or transfer of property; that the corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets; *that even complete ownership of capital stock does not operate to transfer the title to corporate property and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property.'*    At page 402 the court further said: " One who by purchase or otherwise becomes the owner of all the capital stock of a private corporation, does not thereby become the legal owner of its property but title to the latter is vested in the corporate entity.    (*Button* v. *Hoffman*, 61 Wis. 20.)

" ' In no legal sense can the business (or in an equal sense the property) of a corporation be said to be that of its individual stockholders.    It is true that they have an interest in the business carried on, and an influence in controlling its conduct; but they have created a legal entity    *    *    *    and that entity is alone

responsible to persons dealing with it for the conduct of such business.'" Citing *Watson* v. *Bonfils* (116 Fed. 157) with approval, where Judge SANBORN wrote: "It is one thing to vest title to property in a corporation. It is another to divest it. Anyone may deed land to a corporation, but no one but the corporation can reconvey it. At the time this assignment was made the title to these lots was in the realty corporations. * * * The corporations which held it were existing entities, as distinct and separate from their stockholder and creditor as is one individual from another." The same ruling in *Jackson* v. *Hooper* (76 N. J. Eq. 592).

*Button* v. *Hoffman* (61 Wis. [1884] 20) was the leader in this thought, where the court expressed itself by saying: "From the very nature of a private business corporation, or, indeed, of any corporation, the stockholders are not the private and joint owners of its property. * * * It must purchase, hold, grant, sell, and convey the corporate property, and do business, sue and be sued, plead and be impleaded, for corporate purposes, by its corporate name. The corporation must do its business in a certain way, and by its regularly appointed officers and agents, whose acts are those of the corporation only as they are within the powers and purposes of the corporation. * * *

" These general principles sufficiently establish the doctrine that the owner of all the capital stock of a corporation does not therefore own its property, or any of it, and does not himself become the corporation, as a natural person, to *own its property and do its business in his own name*. While the corporation exists he is a mere stockholder of it, and nothing else."

In *Baldwin* v. *Canfield* (26 Minn. 43) it was held that " the sole owner of the stock did not own the land of the corporation, so as to convey the same." (*Manson* v. *Curtis*, 223 N. Y. 313, 322.)

In *Matter of Green* (231 N. Y. 237, 246, 247) the court said: " Business carried on by a corporation cannot be held to be that of its individual stockholders. Property unqualifiedly held by a corporation is owned alone by the corporate body. Stockholders have an interest in the corporation in which they are stockholders, but the business conducted by such corporation is managed and administered by the corporation through a board of directors and the business carried on is solely that of the corporation." (Citing *People* v. *Am. Bell Telephone Co.*, 117 N. Y. 241; *Brock* v. *Poor*, *supra*.)

Recently, in *Matter of Vannier* v. *Anti-Saloon League* (238 N. Y. 457, 463, 464) HISCOCK, Ch. J., speaking of corporations, reiterates his earlier views: " Individuals combine to organize it but when it

is once organized it becomes a single and complete entity which supplants or absorbs the individuals and thenceforth it stands, operates and is judged as a single body and not as a congregation of individuals." (Citing *Werner* v. *Hearst*, 177 N. Y. 63; *Brock* v. *Poor, supra; Elenkrieg* v. *Siebrecht*, 238 N. Y. 254.)

*Boag* v. *Thompson* (208 App. Div. 132, 135) treats of this subject by MANNING, J. " His ownership of ninety-eight per cent of its stock, however, gave him *no direct* or *derivative* right to sue." (*Sigl, Inc.,* v. *Bresnahan*, 216 App. Div. 634, 638. See *Palmer* v. *Ring*, 113 App. Div. 643.)

There cannot be an effective and operative law that is essentially different from a clearly expressed statute law. (Real Prop. Law, § 309; Gen. Corp. Law, § 11.) The exception to the rule laid down in *Brock* v. *Poor* (*supra*) where corporate entity is disregarded will be found with reference to fraud as decided in *Keating* v. *Hammerstein* (125 Misc. 334, 339); *Quaid* v. *Ratkowsky* (183 App. Div. 428, 432; affd., 224 N. Y. 624); *Almirall & Co., Inc.,* v. *McClement* (207 App. Div. 320); *Elenkrieg* v. *Siebrecht* (*supra*); *Berkey* v. *Third Avenue Railway Co.* (244 N. Y. 84); Yale Law Journal, Dec. 1926 (p. 254.) This is not a case where the veil of corporate entity may be pierced.

Again, the executor relies upon section 92 and section 242 of the Real Property Law and the decisions in *Hutchins* v. *Van Vechten* (140 N. Y. 115); *Messiah Home for Children* v. *Rogers* (212 id. 315); *Sinclair* v. *Purdy* (235 id. 245); *Matter of Friedman* (177 App. Div. 755); *Zim* v. *Cohen* (221 id. 341) to sustain his theory that a trust in real property was created and evidenced, or proved, by the paper writings.

In my judgment, the cases cited by the executor are not in point to support the theory of a declaration of trust.

In *Hutchins* v. *Van Vechten* (*supra*) the party holding the title *had executed a power of attorney* to the law partner with the one claiming a half interest, authorizing him to sell, accompanied by a *letter stating that whatever was realized* belonged to himself and the trust claimant jointly and equally, referring him to the other party for further instructions and speaking of the property as " *our property.*" There were other letters stating that, although the property was wholly in his own name, yet the other party had an interest.

In *Messiah Home for Children* v. *Rogers* (*supra*) the donee had gone into *possession in pursuance* of the gift and made valuable improvements.

In *Sinclair* v. *Purdy* (*supra*) special facts existed upon which the court recognized the right of the former owner and the declara-

tion of a duty by his grantee — the sister. Even without the "letter" there was the question of the abuse of a confidential relation as to lead without a writing to the implication of a trust.

Neither do the facts of the instant case come within *Matter of Friedman (supra)*.

*Wendt* v. *Walsh* (164 N. Y. 154) and *Bryant* v. *Shaw* (190 App. Div. 578) were cases where the declarations of trusts were delivered evidences, supporting a trust for money furnished in purchase of real estate.

These cases are dissimilar from ours — they were decided on facts indicating that the person upon whom the court fastened a declaration of trust did something himself, declaring or delivering the evidentiary fact.

As an evidentiary fact, the paper writings, which cannot be aided by parol evidence, prove nothing in aid of the son, because they were not delivered, nor declared. The instant case is devoid of any equities running in favor of the son. There is no legal fraud or breach of duty to support any right of the son. The informal memoranda *omit the declaration of an intention to create a trust,* and can only be "viewed as an engagement" that the property was to belong to him at some future time. Only a promise to give. The memoranda look to the future. As the trust was not legally made, it cannot be upheld. The gift never having been perfected, the court will not infer the existence of a gift by the donor. (*Matter of Gurlitz,* 105 Misc. 30; affd., *sub nom. Matter of Lynde,* 190 App. Div. 907.)

It was held in *Wadd* v. *Hazelton* (137 N. Y. 215, 220) that an intended absolute gift by way of a written assignment which cannot take effect because of the *absence of delivery,* ought not to be enforced as a declaration of trust, when there is no such declaration and when there is no evidence thereof by which an intention to create a trust can be implied. In *Farmers' L. & T. Co.* v. *Winthrop* (238 N. Y. 477, 487) the court restates this principle, saying: "The transaction, failing as a gift because inchoate or incomplete, is not to be sustained as the declaration of a trust (*Beaver* v. *Beaver, supra; Matter of Crawford,* 113 N. Y. 560, 566; *Wadd* v. *Hazelton, supra*)." (See, also, *Matter of Peno,* 128 Misc. 718, 728.)

In any event the declaration of trust must be prior to the conveyance to the company, for it would be against reason to permit a man who has parted with title to charge it with any trust.

The special guardian contended that, as the son was president and director of the corporation, and the estate which he represented as fiduciary being the sole stockholder, the making a deed in the

name of the corporation, he concedes that the legal title was in the realty corporation, and that whatever rights he may have had were in the nature of a claim against the estate, which should have been asserted pursuant to section 212 of the Surrogate's Court Act. He urges the inconsistency of the claim because of the deed made in the name of the corporation. And by causing the deed to be made by the corporation he admits the legal title was in the realty company. He could not convey his own title by using the corporate name. Recognition of ownership by the company was apparently made when the transfer was not effected by Elliott in his own name.

It appears unnecessary to further lengthen the opinion with reasons why the son cannot prevail.

The witness Murphy, the bookkeeper, testified that the book entry January 2, 1924: " debit J. Romaine Brown, Rockwood Street and Concourse, gift to Elliott Brown, $20,000," was predated and actually done after the testator's death. He says it was a " closing entry " to straighten the books out as of the first of the year. The same with regard to the MacCombs road gift. For whatever purpose the entries were made, the court places no reliance on them. If made to bolster the gift claim, it fails and taints the entire testimony of the witness.

It must be held that the son acquired no title, legal or equitable, in the Rockwood street land. He is surcharged with the amount he personally received from the purchaser thereof. I direct that the executor file an amended account indicating the sum of money and mortgage received for this property.

With regard to 1349 MacCombs road land: The decedent conveyed this property to The Nod-A-Way Co., Inc., by deed dated *July 22, 1924.* The writing of June 2, 1922, also relates to this property and says: " Also the improved property on MacCombs Road *is to be conveyed* to Nod-A-Way Co. and held by said company subject to a mortgage of $8,000 and *it is to belong* to Elliott L. Brown."

The words italicized by the court do not apply to an executed gift. Here a different situation exists in point of time. There are the paper writings, the so-called " declaration of trust; " and then, subsequently, the conveyance to the corporation. Between these periods of time the ownership was in the testator. He could have declared a trust. Did he?

It is the executor's contention that there was a transfer of the title to the MacCombs road plot by operation of the statute (Real Prop. Law, § 93; *Murray* v. *Miller,* 178 N. Y. 316; *Gueutal* v. *Gueutal,* 113 App. Div. 310, and cases heretofore referred to on

this subject); that the title to this particular piece of property finds itself in a corporation, The Nod-A-Way Co., Inc., at the death of the testator, burdened with the trust created by the testator.

The witness Clark says he reported to the son as owner, at the son's direction. That deficits were incurred, and six checks were offered in evidence dated during the period from June 27, 1922, to October 24, 1923, purporting to represent profits on the MacCombs road property. Standing alone, these checks are not enough to sustain the son's theory of a gift of the land. There is no evidence of possession by the son. In the case of *Simon* v. *La Bar* (219 App. Div. 624) the defendant went into possession, collected rents and paid interest.

The paper writing with regard to the MacCombs road property amounts to no more than an intention expressed to make a gift, and is not a rule of evidence sufficient to support a declaration of trust. Equity will not interpose to perfect a defective declaration of trust which the donor has left imperfect. (*Young* v. *Young*, 80 N. Y. 422, 435, 436; *Butler* v. *Sherwood*, 196 App. Div. 603, 606; affd., 233 N. Y. 655; *Matter of Humphrey*, 183 N. Y. Supp. 133, 135,)

The lack of proof of delivery of the memoranda and the decision herein as to the declaration of trust with reference to the Rockwood street lots, applies with equal force to the MacCombs road land.

The executor is surcharged with the amount received from the sale of the MacCombs road property. I direct that the executor file an amended account indicating the net amount of money received from the sale of this property.

As to the two checks — one for $17,000 and the other for $5,000: The $17,000 check, dated October 15, 1924, was drawn by the testator to the order of Elliott L. Brown on the Yonkers Trust Company and indorsed "Deposit to the account of Elliott L. Brown — special acc — Elliott D. Brown." The $5,000 check, dated October 25, 1924, was drawn on the Central Union Trust Company of New York to the order of " Cash " and deposited to the account of Elliott L. Brown. Both original checks were offered in evidence, together with the deposit slip showing that the $17,000 check was deposited to the credit of a *new account* in the Bank of Washington Heights to the " account of Elliott L. Brown — special acc."

I conclude that the check of $5,000 was a gift. Robert J. Murphy, the testator's bookkeeper or secretary, testified that two weeks

Surrogate's Court, Westchester County, December, 1927. [Vol. 130

before Mr. Brown's death, he called at his home. Mr. Brown said he wanted to give Elliott some cash and told him to draw a check for $5,000, making it to the order of cash. He said that he intended to give it to Elliott. The check, except as to the signature, is in the handwriting of Murphy. (*Pickslay* v. *Starr*, 149 N. Y. 432, 438.)

The $17,000 check is in the handwriting of the son. The check book stub is in the handwriting of the son and marked " Special." " Special " is defined by Webster as particular; peculiar; different from others; designed for a particular purpose, occasion, or person; limited in range; confined to a definite field of action. (*Kundolf* v. *Thalheimer*, 12 N. Y. 593, 596.) The only evidence with regard to this check was by the nurse, Miss Green, offered by the claimant. She said she " saw Mr. Brown sitting at the side of his bed signing what looked like checks." " He [the testator] told me he had given him checks for *bank accommodations.*" She thought one was for $8,000 and one was for $17,000, and she believed this happened within the last week before Mr. Brown died. She placed the signing of the two checks in one transaction. As a matter of fact, the checks were dated ten days apart. The one dated October fifteenth was deposited October sixteenth, and, consequently, they had to be made at different periods. What did the testator mean when he said the check was for " bank accommodations? " Not a strong statement to support a gift.

In the absence of an explanation, the presumption arising from the delivery of a check is that it was delivered in payment of a debt, and not as a loan; but that it may represent a *loan*, or a *gift*, or *money of the drawer to be applied by the drawee to the use of the former as his agent, or otherwise.* What evidence has been adduced, if any, to indicate into which legal channel the $17,000 check should go? The check is ear-marked, also the deposit slip, as " *special account.*" Such ear-marking has value as evidence tending to show that the making by the testator of his check to the son's order was neither the payment of a debt, nor as a gift, was not a loan, but was money to be applied by the drawee to the use of the testator. Of course, if the facts are as consistent with the one as with the other presumption, then neither should prevail, but, in my opinion, the ear-marking of the check as a " special account " makes it altogether probable that the testator meant to create a fund for his own use. (Neg. Inst. Law, § 35; *Nay* v. *Curley*, 113 N. Y. 575, 577; *Leask* v. *Hoagland*, 205 id. 171, 177; *Marks* v. *Kellogg*, 170 App. Div. 464, 468.)

I feel constrained to hold as a matter of law that the evidence

is insufficient to establish a gift of the $17,000 check to the son of the testator, and, consequently, the executor is surcharged with this amount of money.

As to the Washington Heights Bank stock: The executor claims his father gave him ninety shares of the stock on October 22, 1924. The par value is $100 per share; the market value was then $20,000. Since that time the stock, or its additions, are worth much more, it is alleged. The testator still owned at the time of his death one hundred shares. The objectors claim that no valid gift was made and that the stock in kind and all its avails in kind should be accounted for. The ninety shares of stock were in decedent's name in three certificates, one for fifty, another for twenty, and still another for twenty shares. He kept them in his safe deposit boxes in New York city. No proof was offered to show how testator got them in his possession. Mr. Murphy, the secretary, says he did not bring them to him. The decedent received the quarterly dividends thereon October 1, 1924.

The original certificates of stock, numbered 154, 155 and 156 of the Bank of Washington Heights of the city of New York, were offered in evidence. An indorsement by the testator appears on the back of each certificate under date of October 22, 1924. It is admitted that his signature is genuine. Under date of October 25, 1924, upon surrender of the three certificates then in the possession of the son, the bank issued three new certificates — Nos. 225, 226 and 227, also respectively for fifty, twenty and twenty shares. The name of the transferee on the original certificates is Elliott L. Brown, who is also the *subscribing witness* upon each stock certificate. In both places where Elliott L. Brown's name is written, the writing is his. The testimony is that the three certificates were brought to the bank on October twenty-third by the son, and the name of William H. Pletz, then cashier of the bank was inserted as the irrevocable agent. The stock was recorded by the transfer registrar on October twenty-seventh. The fact of possession and transfer, together with certain declarations of decedent, are relied upon by the claimant to constitute a gift.

In the last two weeks of Mr. Brown's lifetime, during which period the gift is alleged to have been made, he had numerous calls from members of his family and friends, and frequent calls from his physician and his confidential secretary, Mr. Murphy. He was attended by his chauffeur at times, and by a day and night nurse. The son slept at the father's house during this period, and was in charge of the business affairs at the office. Between early October and the date of his death, Mr. Brown left his house twice — once to attend a bank meeting, the second time to register

Surrogate's Court, Westchester County, December, 1927.    [Vol. 130

at the polls on October thirteenth. The executor offers proof that various admissions were made by decedent showing a gift of the bank stock.

William C. Prime, the attorney who drew his will and was testator's personal friend, testified, fixing the conversation as of July 12, 1924, the date of the execution of the will, that he (Mr. Brown) said "he had given certain shares of stock, how many I do not remember, in the bank which you refer to, to his son Elliott." The effect on his (the witness') mind was that he said he "had already given him certain shares." Witness spoke to him about need for taking care of his son with an income. The witness also testified that he saw him the week of his death when nothing was said about bank stock, and the further evidence by the witness is that the testator was an active trader in real property and a keen judge of values, and had definite opinions regarding them.

The physician, Doctor Trotter, testified that the cause of death was cerebral apoplexy; that he was alert and keen up to his death; that in the second week in October the testator mentioned to him " in connection with financial matters he made a remark to me which made an *impression* on me at the time, that he had seen to it that his son had gotten some of what was coming to him eventually, before he went. He did not specify what it was."

The testimony of Katherine Green, the nurse, relates alone to the matter of checks.

Mrs. Brown, the wife of the son Elliott, testified that decedent had conversations with her about the bank stock. " He told me *he had given him bank stock;* that he should have the transfer attended to."

Mr. Murphy, testator's confidential secretary, testified that he was at the house nearly every other day; testified without *recalling the exact date*, that testator told him the night preceding *he had signed some stock* which he was giving to Elliott with instructions that Elliott take them down that day, and have them changed on the books of the Bank of Washington Heights.

The record is barren of any direct proof as to where the claimant got the certificates and the manner in which he came possessed of them.

In *Grey* v. *Grey* (47 N. Y. 552) the court said: " Is the production of this note by the defendant, under the facts of this case, evidence of its discharge, when it is proved not to have been paid or satisfied? * * * [Here the case shows without contradiction that the defendant, living at home with his father, had a key that fitted his father's desk, where this note was kept.] Though the plaintiff

had possession of the note at the trial, the Supreme Court held he was not entitled to recover   *   *   *.   It is clear that if I own a chattel, not a chose in action, to-day, and next week it is found in another's possession, the law does not presume a legal transfer of the title to the possessor.   But as against me, if title be claimed he must prove it.   Why should any different rule prevail as to a promissory note? "

*Richardson* v. *Emmett* (170 N. Y. 412) holds that " it was necessary in order to make out a gift to show a delivery of the stock certificates to Miss Emmett."   At page 421 the court said that the possession of the certificate of stock " was not evidence from which an inference could be drawn that the testator had delivered the stock to her." (Citing Code Civ. Proc. § 829; *Clift* v. *Moses*, 112 N. Y. 426; *Matter of Humfreville*, 6 App. Div. 535, 536.)

The probative value of the testimony of Mr. Prime, the attorney, is in my judgment nil as it places the time long before the actual transfer of the stock.   The testimony of the son's wife must be considered with caution.   The witness Murphy could not recall the exact date.   His testimony was not explicit.   It was very general. He fails to identify any particular stock.   The same is true of the testimony of the wife of the claimant.   While she is a competent witness, she is interested.

*Coutant* v. *Mason* (160 App. Div. 575, 576, DOWLING, J.; revd., on other grounds, 221 N. Y. 49) says: " While the plaintiff has produced witnesses who testified to declarations by the deceased *   *   * their testimony is not, in our opinion, of the character required to sustain a gift *inter vivos*.   The quality of the testimony required to establish such a gift, and the necessity for the proof thereof being of a clear and conclusive character, have been repeatedly laid down, among other cases in *Lucas* v. *Boss* (110 App. Div. 220); *Matter of Schroeder*, No. 1 (113 id. 204), and *Matter of Manhardt* (17 id. 1).   In this case testimony was given by witnesses *   *   * limited to general statements made by the deceased *   *   *.   There was no attempt to specify what property he had actually given to the wife."

In my opinion, the quality of the testimony in the instant case is insufficient to support the gift.   (*Matter of McMillan*, *supra*, and cases cited; *Ennis* v. *Chichester*, 187 App. Div. 53, 71, 72.)

A letter was offered in evidence dated October twenty-eighth, signed by the vice-president of the Bank of Washington Heights, addressed to the testator, calling attention to the transfer of the stock.   No proof was offered that this letter was ever delivered to Mr. Brown.   It certainly does not bring knowledge of the transfer to the decedent without such proof.   The stock was pre-

sented to the bank by Elliott L. Brown, with a request to have the transfer made. The most that can be said is that the evidence shows a member of the family of the decedent is found in possession of certain shares of bank stock. It proves nothing in derogation of the ownership by the decedent. There is no evidence that the donor knew anything of the transaction.

In *Matter of Crawford* (113 N. Y. 560, 565) the court said, upon evidence which was considered unsatisfactory to support a gift: " We are not prepared to hold that the simple indorsement on a bond payable to bearer, of the name of another party than the true owner, made at his request and at the office of the company issuing the bond, and by an officer thereof, passes the title to the bond to the party whose name is thus indorsed. An owner of a bond may intend to give it to another, and for that purpose he may obtain such an indorsement, but that does not constitute a delivery of the gift to such person. The owner may subsequently change his mind, and we do not say that he could not effectuate such change without the aid of an intended donee to whom he had never delivered the gift. The most that the evidence shows is an intention to make a gift of these bonds, but the material fact of a delivery is entirely unproved and cannot be implied from the evidence."

Ownership of such property is presumed to continue and, in my opinion, such presumption by claim of gift not asserted in the lifetime and *in the presence of the donor* is not overcome by the evidence offered. (*Matter of Canfield*, 176 App. Div. 554, 557.) The son had possession of the stock certificates. He presented them to the bank for transfer. Possession must be accompanied by some proof of delivery, which is not present in the instant case; possession alone is not enough. (*Matter of Perry*, 129 App. Div. 587; *Cuyler* v. *Wallace*, 183 N. Y. 291; *Matter of Bolin*, 136 id. 177; *Matter of Gilman*, 92 Misc. 140.) While the degree of proof required is only a fair preponderance of the evidence in support of the claim (*Caldwell* v. *Lucas*, 233 N. Y. 248), it is for the triers of the facts to take into consideration all the circumstances in arriving at a conclusion. The value of declarations, or admissions in this class of cases must be received with the utmost caution. (*Matter of Ennever*, 116 Misc. 32. See Surrogate KETCHAM's opinion on similar facts, *Matter of Gilman, supra.*) All of the elements that constitute a valid gift are not present with reference to the bank stock. The vital element of delivery is lacking. The facts do not meet the test stated in *Beaver* v. *Beaver* (117 N. Y. 421, 428; cited with approval in *Matter of Van Alstyne*, 207 id. 298, 306). Nor is the testimony offered clear, convincing, nor satisfactory, in support of a gift. (*Lehr* v. *Jones*, 74 App. Div. 54.) The son

has not affirmatively established that there was a delivery to him with the intent to effect a gift.

The transfer by assignment of securities ·.1 the daily affairs of life, and especially in the " street " is bas· 1 upon consideration and actual delivery.

I hold that the said ninety shares of the stock of the Bank of Washington Heights belong to the estate. The court will take further evidence of the facts with regard to this stock in order to make a full and proper decree of restitution to the estate of the stock and its additions.

Submit decision and decree in accordance with this opinion with notice to attorney for the executor.